THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ONE 1968 CADILLAC AUTOMOBILE VIN #J8316714 *et al.*, Defendants—(MARJORIE MCHALE, Defendant-Appellant.)

(No. 71-175; 

Second District—April 11, 1972.

Diver, Ridge, Brydges & Bollman, of Waukegan, for appellant.

William J. Cowlin, State's Attorney, of Woodstock, for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

This appeal is taken from a judgment of the Circuit Court of McHenry County, after a bench trial, finding that a 1968 Cadillac was used in the commission of a criminal offense, and ordering that the Cadillac be forfeited to the State and sold. Ill. Rev. Stat. 1969, ch. 38, par. 36—2.

At approximately 10:00 A.M., November 21, 1969, a warrant was issued to search and seize gambling paraphernalia from Christopher's Lounge, a public restaurant and tavern located in Crystal Lake. About one hour later, officers Marvin A. Grehn and Robert W. Swalwell of the Illinois State Police, both out of uniform, entered the Lounge. Each went to the bar and placed bets with Danny Metropulos by writing the name of a horse and track on a slip of paper. These slips were put in a cigar box by the cash register. The officers sat down for 5—10 minutes until they saw Danny remove the slips from the box and start toward the kitchen. Swalwell then identified himself and placed Danny under arrest. Christopher Metropulos then came into the restaurant area from the kitchen and was arrested. Swalwell signaled for other officers to enter, who included Assistant State's Attorney Thomas F. Baker, Officers McFeely and DeGrosso of the Illinois State Police, and Chief Johns, Sgt. Harrison, Sgt. Sheldon, and other officers of the Crystal Lake Police Department.

Several patrons of the restaurant were asked to identify themselves and were permitted to leave. A search of the premises was then initiated. About five minutes later, Richard Donkel, (whose name appeared on the warrant) came through the front door and was arrested. Five minutes after Donkel's entry, Lawrence McHale came through the door. Assistant

State's Attorney Baker said he turned as if to leave, although Officers Grehn, Swalwell, and Harrison could not recall such a motion. Officer Swalwell immediately told him, "You're under arrest." Sgt. Harrison put his hand on McHale's shoulder and Assistant State's Attorney Baker asked who the man was. On being informed, he ordered Harrison to place McHale under arrest, which Harrison did. McHale was instructed to sit in a booth until the search was completed, when he and the other men arrested were taken to the Crystal Lake Police Station. There, McHale was searched, although no warrant had been issued to search his person. Baker placed the time of the search at 2:30 P.M., or 2½ hours after the search of Christopher's Lounge began, while Officer McFeely said it was shortly after noon. Baker and McFeely both testified that during the search, McHale made a statement to the effect that the police shouldn't pick on him because he was just a small-time gambler. Several slips of paper and some currency were taken from McHale.

At approximately 1:30 P.M., a warrant was issued to search the 1968 Cadillac which McHale had driven to the Lounge. The car was owned by his wife Marjorie McHale. Officer McFeely's complaint for the search warrant stated that he had probable cause to believe that the car contained gambling materials because: Lawrence McHale had been arrested that day "for the offense of gambling"; McHale had driven the car to the place of arrest; in 1965 McHale had been arrested and "a large quantity of betting paraphernalia" was confiscated from his car; and the search of McHale aforedescribed revealed he had $1,400 in "groups of bills of small denominations" and "betting slips". A search of the car, which had been kept under surveillance since the time of arrest, was then conducted. It revealed two note pads, numerous betting slips, a bank envelope, a plastic container filled with red capsules, an Arlington Park program, and 98 pink cards. Over objection, Sgt. Harrison testified that, in his opinion, the pink cards were parlay cards used for making bets on football games.

Assistant State's Attorney Baker testified that he ordered McHale's arrest after being informed by Sgt. Harrison of his identity. He stated that McHale was arrested because he was a known gambler; he was known to frequent Christopher's Lounge, and was suspected of picking up bets there; and as soon as he saw the police he tried to leave. When asked what criminal act McHale had committed, he stated that McHale was suspected of violating the Act of Gambling.

Officer Grehn, when asked why McHale was arrested, said he had heard the name and reputation, and understood why the arrest was being made when told this man was Larry McHale. He stated that McHale was doing nothing to justify an arrest when he walked into the

restaurant, and he had no knowledge of McHale having just committed any crime. He said McHale was arrested because he was a known gambler and was seen in a gambling place.

Officer Swalwell testified that McHale wasn't committing any crime as he walked through the door, and that he had no knowledge of McHale having previously committed one. He said McHale was arrested on the basis that he was a known gambler. He further testified that on November 19th, he (Swalwell) had placed a bet with Danny at Christopher's Lounge. On that date, Dick Donkel came in, took the contents of the cigar box and left. McHale also entered the Lounge, talked with Danny for three or four minutes, and left.

Sgt. Harrison testified, over defense objections, that his first official contact with McHale was in 1965, when he assisted the state police in arresting McHale in Island Lake; that he was also present when McHale was arrested in 1967; and that he was again present in 1968 when McHale was arrested for gambling. He stated that beginning in February, 1969, he maintained a surveillance of McHale, which continued until the arrest in November. During this time McHale followed a partial pattern. He would "Arrive in between 10:30 to a quarter to 11:00, at Dave's News Stand and pick up an Illinois Racing Form; drive to Christopher's Lounge or walk on to Mr. Bloomington's Barber Shop; and then to Matt's Tavern and to Christopher's; then to Ted Sterne's Basket Shop; and from there to Bill's Grill, and it would float back and forth."

Officer McFeely testified that beginning in January-February, 1969, he conducted a gambling investigation, which included maintaining surveillance on Lawrence McHale. From February to November, 1969, except for a three week vacation, he followed McHale 1—3 times a week. He found that McHale frequented three basic places in the Crystal Lake area: Christopher's Lounge, Sterne's Lumber Co., and Bill's Grill. McFeely stated that on May 3, 1969, he was in Christopher's Lounge when McHale came in, talked with Christopher Metropulos, and took slips of paper from him. McHale watched the Kentucky Derby, and after the race, he went to a pool table, where he counted out money and gave it to people. McFeely stated, over objection, that McHale appeared to be paying off bets.

The trial court ordered the forfeiture of the car, ruling that the search of Lawrence McHale's person was valid under Ill. Rev. Stat. 1969, ch. 38, par. 108—9, which provides:

"In the execution of the warrant the person executing the same may reasonably detain to search any person in the place at the time:

(a) To protect himself from attack, or

(b) To prevent the disposal or concealment of any instruments, articles or things particularly described in the warrant."

The court reasoned that based on the legality of the initial search of McHale, the warrant to search the car, obtained on the basis of evidence discovered in the first search, was also valid. On this evidence, he found that the car was used in the crime of gambling, as defined in Ill. Rev. Stat. 1969, ch. 38, par. 28—1. He further found it inconceivable that the defendant owner did not know the use being made of the automobile by her husband.

Defendant contends that the search of Lawrence McHale constituted an unreasonable search and seizure, being neither a search incident to a valid arrest nor within the purview of the statute allowing searches of persons present on premises subject to a warrant. Since the search was improper, she argues, the information uncovered could not constitute the basis for a warrant to search the car. She concludes that since the only evidence, produced at trial was the product of these two illegal searches, there is no competent evidence to support the trial court finding that the auto was being used to commit the offense of gambling.

■■ A forfeiture proceeding, being quasi-criminal in nature, is subject to the exclusionary rule of the 4th Amendment, as applied to the States by the 14th Amendment. (*One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania* (1965), 380 U.S. 693, 700, 702, 85 S.Ct. 1246, 1250, 1251.) See *Mapp v. Ohio* (1961), 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

■■ The first question to be considered is whether the police had probable cause to believe that Lawrence McHale was committing or had committed an offense, thereby rendering the warrantless search valid as one made incident to a valid arrest. The test of probable cause is whether the arresting officer had reasonable grounds for believing an offense was committed and that defendant has committed it. (*People v. Galloway* (1965), 7 Ill.2d 527, 534; *People v. McCrimmon* (1967), 37 Ill.2d 40, 43.) It is not necessary that there be sufficient evidence to convict the arrested man (*Fulford v. O'Connor* (1954), 3 Ill.2d 490, 500; *People v. Mills* (1968), 98 Ill.App.2d 248), but probable cause exists when a reasonable man, having the knowledge possessed by the officer at the time of the arrest, would believe that the person arrested is implicated in the crime. (*People v. Ford* (1934), 356 Ill. 572, 575; *People v. DeLuca* (1931), 343 Ill. 269, 271.) When more than one officer is involved in the arrest, the knowledge of each is the knowledge of all. *People v. Peak* (1963), 29 Ill.2d 343, 349.

■■ The State argues probable cause on the basis that: McHale was

a known gambler with known past arrests, and his 1965 arrest involved a gambling operation using the name of Grant Construction Co., which was the same name used to register a phone at Christopher's Lounge; McHale entered the establishment on November 21st during a valid search; surveillance revealed that McHale stopped at Christopher's Lounge daily; two days earlier, McHale had entered the establishment and talked to Christopher Metropulos; and on the previous May 3rd, McHale was seen to take slips of paper from Christopher Metropulos and then give money to people after the Kentucky Derby. We cannot agree that these grounds are sufficient. There can be no question that the allegation that McHale was a known gambler is "assertion of suspicion that is entitled to no weight." (*Spinelli v. United States* (1968), 393 U.S. 410, 414, 89 S.Ct. 584, 588, 21 L.Ed.2d 637.)[1] Likewise, knowledge that McHale had previously been arrested for gambling, with no evidence of convictions, cannot be taken as evidence that McHale actually engaged in gambling activities. (*United States v. Mirallegro* (7th Cir. 1967), 387 F.2d 895, 898; *United States v. Menser* (2d Cir. 1966), 360 F.2d 199, 203.) Therefore, the fact that Christopher's Lounge had a phone registered to the same name used by a gambling operation in 1965, when McHale was arrested, is irrelevant, since McHale was not convicted of having committed any crime in that instance. The next three purported grounds all combine to show only that McHale was a frequent visitor of Christopher's Lounge. The surveillance revealed that he stopped there every day, but does not connect him with any gambling activities carried on there. Since he did stop there daily, it does not seem that his entrance during the search, carrying nothing and doing nothing suspicious, nor his entrance and talk with Christopher Metropulos two days earlier, was anything out of the ordinary. Finally, McHale's activities on May 3rd do not constitute probable cause to arrest him on November 21st. We agree that his conduct on that date was suspicious, and could constitute probable cause for an arrest. But it was probable cause for an arrest on May 3rd, not on November 21st. The State has cited no case, and we have been unable to find any, holding that an isolated incident is probable cause for an arrest six months later. We do not believe that McHale's May 3rd activities have any relevance regarding his implication in criminal activities taking place on November 21st.

---

[1] While *Spinelli* involved a review of a magistrate's finding of probable cause for the issuance of a search warrant, the analysis is basically the same as that involved in determining whether the police had probable cause for an arrest without a warrant. *Spinelli v. United States, supra,* p. 589, n.5; *Whiteley v. Warden of Wyoming Penitentiary* (1971), 401 U.S. 560, 566, 91 S.Ct. 1031, 28 L.Ed.2d 306. See also *Acosta v. Beto* (1969), 297 F.Supp. 89.

The case of *People v. Wexler* (1969), 116 Ill.App.2d 400, cited to us by the State, is clearly distinguishable, since there the arresting officer observed the defendant for 25 minutes before arresting him, during which time the officer saw five people approach him and offer him slips of paper and money, which the defendant put into his pocket. We conclude that, viewing the totality of circumstances known to the police, the search of McHale cannot be justified as one conducted incidental to a valid arrest.

■ ■ Nor do we agree with the trial court that the search can be justified as one undertaken "to prevent the disposal or concealment of any instruments, articles or things particularly described in the warrant." (Ill. Rev. Stat. 1969, ch. 38, par. 108—9.) Both *People v. Kielczynski* (1970), 130 Ill.App.2d 231, 264 N.E.2d 767, 771, and *People v. Harrison* (1967), 83 Ill.App.2d 90, 96—97, said that the statute authorizes the police to search a person found on the premises described in a search warrant. *People v. Pugh* (1966), 69 Ill.App.2d 312, 315—316, went farther and allowed the police to search a person entering onto the premises during a valid search. But we do not think the statute can be extended to encompass the search of McHale at the police station. Section 108—9 replaces Section 699 of Chapter 38, which provided that "When a person charged with a felony is suspected by the judge * * * before whom he is brought" to have a dangerous weapon or evidence of the offense, the judge could order him searched. (Ill. Rev. Stat. 1963, ch. 38, par. 699.) The Comments to the present section recognize that such a search comes too late, and that the need for a search usually arises * * * "when the officer first arrives at the place where the goods are to be seized." (Committee Comments, Ill. Rev. Stat. 1969, ch. 38, par. 108—9.) They also state that the section "provides a realistic approach to the problems which confront the executing officer when he arrives on the scene." (Committee Comments, Ill. Rev. Stat. 1969, ch. 38, par. 108—8.) The Comments thus indicate that the Statute was enacted to give police officers conducting a search pursuant to a lawful warrant the power to cope with the imminent danger of attack on the officer or destruction of easily disposable evidence. The Statute does not grant to police the power to search someone at their leisure. The need for the search is immediate, and it must be conducted at the earliest opportune moment after the danger presents itself. We find that the search of McHale after he was in custody and taken to the police station does not fall within the purview of the Statute.

The reasoning employed in cases decided under "stop and frisk" statutes is similar. (See *Nicks v. United States* (Dist. of Columbia, 1971), 273 A.2d 256, 258.) There, as here, the need for a search is

immediate, and a contemporaneous search may be undertaken to seize weapons which might be used to assault an officer. (*Terry v. Ohio* (1968), 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889.) The exceptional circumstances purportedly justifying a warrantless search not incident to an arrest must be measured in light of the urgency of the situation. We do not believe the circumstances existing here were so "exigent" as to justify the search undertaken. See *Terry v. Ohio, supra,* p. 20; *Coolidge v. New Hampshire* (U.S. 1971), 29 L.Ed.2d 564, 576.

■■■■ Although the search of the automobile was conducted pursuant to a search warrant, the basis of the complaint for the warrant was the arrest of McHale and the materials seized from him. It is well established that evidence obtained in an unlawful search not only cannot be used in court, but cannot be used at all. (*Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 390, 40 S.Ct. 182, 183; *Wong Sun v. United States* (1963), 371 U.S. 471, 484, 83 S.Ct. 407, 416, 9 L.Ed.2d 441; *People v. Bean* (1970), 121 Ill.App.2d 332, 335.) Since the arrest and search of McHale were unlawful, neither could properly from the basis for the issuance of a warrant, and the evidence obtained in the search of the car was inadmissible in evidence. *People v. Sovetsky* (1931), 343 Ill. 583, 589.

Since both searches were illegal, there is no competent evidence showing that the car was used for the crime of gambling. The decision of the trial court must, therefore, be reversed.

Judgment reversed.

GUILD and DOUGLAS, JJ., concur.