THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD C. REYNOLDS, Defendant-Appellant.

Third District    No. 80-288

Opinion filed May 13, 1981.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

After a jury trial, Donald C. Reynolds was convicted of armed robbery of the Burger King Restaurant in Pekin. This armed robbery occurred on November 21, 1979. The evidence used to accomplish this conviction was obtained from a search of Reynold's apartment pursuant to a search warrant. The basis for the search warrant was an affidavit based on facts totally unrelated to the November 21 robbery of the Burger King Restaurant. The affidavit was filed and the warrant was issued to search for proceeds from a December 23, 1979, armed robbery of the Long John Silver's Restaurant, also in Pekin. Defendant contends that the trial court erred in denying his motion to quash the search warrant as (1) the complaint for search warrant failed to set forth facts establishing probable cause and (2) the complaint's affiant deliberately filed a vague and misleading affidavit.

The defendant, Donald C. Reynolds, is an ex-policeman and a noto-

rious felon. His presence in Central Illinois has constituted a virtual one-man crime wave. On the evening of December 23, 1979, when Reynolds was arrested following an armed robbery, it is easy to understand why the police officer wanted to get inside Reynolds' apartment in Peoria to take a look.

This case comes about because such a search warrant *was* obtained for Reynolds' apartment; the apartment was searched, and evidence was obtained concerning an armed robbery that had occurred a full month previously. As a result of that evidence, Reynolds was convicted of the previous armed robbery. There was nothing in the apartment relating to the armed robbery of December 23.

Reynolds asked that the evidence obtained from his apartment be suppressed because the complaint for warrant failed to set forth probable cause and because it was deliberately vague and misleading. Both objections were correct.

The complaint for search warrant reads as follows:

"Inv. Jim Conover of Pekin Police Department, complainant, now appears before the undersigned Associate Circuit Judge of the Tenth Judicial Circuit of Illinois, and requests the issuance of a Search Warrant to search Apt. A—1 at 3623 North Sterling Avenue in Peoria, Peoria County, Illinois, and seize the following: a green ski mask, a blue steel automatic pistol, eleven-hundred sixty-four dollars ($1,164.00) in United States currency, separated by two pieces of yellow paper and a check made payable to Scott Williams, which are contraband, or which constitute evidence or fruits of the offense of ARMED ROBBERY, in violation of Section 18—2, Chapter 38, of Ill. Rev. Stat.

I further say that I have probable cause and reasonable cause to believe, and do believe, that the above-listed items to be seized are now located on the person or the premises described above, because at approximately 9:07 P.M. on December 23, 1979, Pekin Police officers responded to an 'armed robbery in progress' call at the Long John Silver's Restaurant, 2111 Court Street, Pekin, Tazewell County, Illinois. I investigated that armed robbery, and after talking to witnesses, I learned that a white male, wearing a green ski mask and armed with a blue steel pistol, robbed the manager of said restaurant of eleven-hundred sixty-four dollars ($1,164.00) in United States currency. That manager, a Mr. Earl McCart, says that that currency was separated by two yellow sheets of paper, and also contained a check made payable to Scott Williams.

At 9:11 P.M. on December 23, 1979, Officer Scott Kedzior, in responding to that 'armed robbery in progress' call observed a blue corvette, bearing Illinois license GV 3742, run a stop sign as it was

headed northbound on Parkway Drive away from the said restaurant which is located at the intersection of Parkway Drive and Court Street in Pekin, Tazewell County, Illinois. Officer Kedzior attempted to stop the said corvette using his red lights. The said corvette increased its speed and failed to stop for Officer Kedzior, and a high-speed chase followed, with Officer Kedzior losing the said corvette as it headed north toward Peoria on 14th. Street. Illinois license number GV 3742 checks to Donald C. Reynolds.

Later on December 23, 1979, Donald C. Reynolds, owner of the said corvette, was arrested on an unrelated Peoria County warrant. Subsequently I talked to Donald C. Reynolds and he told me that he was and is living at 3623 North Sterling Avenue in Peoria, Illinois. Donald C. Reynolds gave consent to search the said corvette. That corvette was searched and nothing was found in it.

Donald C. Reynolds will not consent to a search of said Apt. A—1.

I called Mrs. Frank McFarland, member of the board of supervisors of Sterling Arms Condo's at 3623 North Sterling Avenue in Peoria, Peoria County, Illinois, and she advised that for the last six months, Donald C. Reynolds has paid the assessment fees for Apt. A—1, 3623 North Sterling Avenue, Peoria, Peoria County, Illinois, and she knows him and knows that he lives in said Apt. A—1.

Therefore, I have probable cause and reasonable cause to believe, and do believe, that the above-named items are now located inside said Apt. A—1; and I pray that a search warrant for said Apt. A—1 may issue in accordance with law."

There is nothing in the complaint to indicate in any way that Reynolds had an opportunity to place either proceeds or evidence of the crime in his apartment following the December 23 armed robbery. The robbery occurred at 9:07 p.m. in Pekin. Reynolds' apartment was in Peoria some 15 to 20 miles distant. At 9:11 p.m., Reynolds' Corvette was observed headed northbound in Pekin away from the scene of the armed robbery. The car ran a stop sign and eluded a pursuing officer after a high-speed chase. The car was headed north on 14th Street and still in Pekin when the officer lost it. Exactly 35 minutes later, the car was located outside the Pekin apartment of Reynolds' girlfriend. Reynolds was inside that apartment. It is Reynolds' quite correct contention that it was impossible for him to drive to Peoria from the Pekin armed robbery, deposit items in his apartment, and then return to Pekin to his girlfriend's apartment in the allotted time. The complaint does not indicate facts that would indicate an opportunity to do this. And, it deliberately omits known facts that flatly obviate this opportunity.

The geography and the facts must be kept in mind. This is a tale of

two cities. Reynolds' apartment was in Peoria. The armed robbery and his girlfriend's apartment were in Pekin. The search warrant was for the Peoria apartment.

As an aid to comprehension of the principle involved, consider the situation if Reynolds' apartment had been in Chicago, or San Francisco, or even London. Could it be argued that Reynolds had the opportunity on the same evening and within minutes of the armed robbery in Pekin to make a round trip between Pekin and Chicago, San Francisco or London. Of course not. It is no less relevant or material to consider whether Reynolds could have made the round trip between Pekin and Peoria.

A full and fair reading of the evidence in this case makes it clear that the officer executing the search warrant complaint knew this. He knew full well that it was impossible for Reynolds to have deposited proceeds of the December 23 armed robbery in his Peoria apartment and then return to Pekin within the time that had transpired. The affidavit was drafted to carefully exclude any explicit mention of when Reynolds' car was finally seen in Pekin. The trial judge, although allowing an offer of proof, refused to consider Reynolds' evidence as to these facts. He found probable cause in the complaint and refused to go beyond the four corners of the document.

So far as the law applicable to this case is concerned, it is covered by the fourth amendment to the United States Constitution; by the United States Supreme Court cases of *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, and *United States v. Carmichael* (7th Cir. 1973), 489 F.2d 983.

The fourth amendment to the United States Constitution provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon prob-able cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

*Franks v. Delaware*, cited above, authorizes inquiry into questions of false and misleading search warrant affidavits where there is reckless disregard for the truth. *United States v. Carmichael*, cited above, is authority for the proposition that deliberate perjury by a government affiant is grounds for striking not only the false statements but the warrant itself and any evidence produced from a search based thereon. The omission in this case was deliberate. It was just such a reckless disregard for the truth as was envisioned in *Franks v. Delaware*. This is not a case where a deliberate misstatement can be stricken and a determination

made if the affidavit will stand without the misstatement. This is a case where the affidavit is insufficient because there is something lacking. That which is lacking is a recitation of facts to indicate that Reynolds had an opportunity to deposit the evidence in his apartment. It is lacking because the officer knew that the facts indicated that Reynolds had no such opportunity. Therefore, he deliberately left those facts out of his affidavit. What we have here is a deliberate omission, calculated to mislead the judge who was being asked to issue the search warrant. The only response comporting with the Constitution and with basic, ethical procedural practice is to strike the warrant and any evidence produced from a search based thereon. Since that evidence was the crucial basis for Reynolds' conviction, that conviction must be reversed and this cause remanded.

The fourth amendment to the United States Constitution provides for the right of the people to be secure against unreasonable searches and seizures and further provides that search warrants shall not issue except upon probable cause. That proscription was violated in this case.

All citizens are entitled to their constitutional rights. Even guilty ones. If constitutional rights are not upheld and wrongful searches are not suppressed, the security of every citizen is diminished.

Reversed and remanded.

ALLOY and STOUDER, JJ., concur.