THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. WILLIAM O'NEILL, Defendant-Appellee.

First District (4th Division)   No. 84—565

Opinion filed August 22, 1985.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Assistant State's Attorney, of counsel), for the People.

Edward J. Egan, of Chicago, for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Defendant, William O'Neill was charged with syndicated gambling. (Ill. Rev. Stat. 1983, ch. 38, par. 28—1.1(d).) Pursuant to a search warrant issued as a result of Detective Richard Weber's affidavit regarding certain gambling activities taking place at 1380 East Hyde Park Boulevard, the above premises were searched and the police found the defendant, instruments of illegal gambling and a sum of cash. The defendant was then arrested. Subsequently, under the principles of *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, the defendant filed a motion to quash the search warrant and to suppress the evidence allegedly illegally seized. As part of this motion the defendant submitted his own affidavit directly refuting the allegations made in Detective Weber's affidavit. The trial judge permitted an evidentiary hearing on the defendant's motion. Af-

ter the hearing, the trial court granted defendant's motion to quash the search warrant and to suppress the evidence seized during the execution of the warrant. The State now presents this interlocutory appeal.

As was stated in his affidavit in support of the search warrant, on Saturday, November 5, 1983, during the course of his investigation, Weber, allegedly through an informant's tip, became aware of a gambling operation where upon dialing telephone number 538-0723, one could make a bet on a sport's event with the man who answered the phone. On November 5, Detective Weber and the informant went to a telephone, dialed the number, let the phone ring once, and heard a male voice answer. The informant was handed the telephone in such a way that the detective could listen. When the phone was answered the informant gave the voice a "code number" to which the voice replied, "o.k., code no. ----- go ahead." The informant gave to the voice a series of college football bets which totalled in excess of $1,500. The voice on the other end of the phone accepted the bets, read them back to the informant to verify them, and when the bets were found to be correct, the conversation was ended.

Detective Weber again met with the informant on Sunday, November 6, 1983, and repeated the entire process. The telephone number was checked by Detective Weber to determine the subscriber. Illinois Bell Telephone security listed Janet Green of 1380 East Hyde Park Boulevard, apartment 511, Chicago, Illinois, as the subscriber.

On Monday, November 7, 1983, all the foregoing information regarding the events of November 5 and 6, 1983, was presented to a magistrate by Detective Weber in the form of a complaint for a search warrant. The magistrate then made a finding that probable cause existed and issued the search warrant.

In executing the search warrant on November 7, 1983, the police officers entered the apartment and found it vacant except for the defendant, two telephones with separate numbers, various betting and "slough" sheets and a torn and soiled stained sofa. The defendant was arrested in the apartment with the gambling contraband in his possession. After the defendant was taken into custody, Detective Weber and his supervisor-sergeant remained behind and answered the telephones. Detective Weber recalled that bets were made and recorded which were phoned in while they sat in the apartment.

The defendant then filed a motion for an order on the Chicago Police Department to make a return instanter on the property that was seized on November 7, 1983; to file an inventory of all property seized; and to permit the defendant to examine the property. Some-

time later, defense counsel, in the presence of the assistant State's Attorney and Officer Weber examined the evidence seized by the police on November 7, 1983. The defendant then filed a motion to quash the search warrant and suppress the evidence. The motion provided in pertinent part:

"The affidavit of Richard Weber in the complaint for search warrant is perjurious on a material statement of fact in that it alleges that a confidential informant had a telephone conversation in the presence of Richard Weber with someone at telephone number 538-0723 on November 5 and 6, 1983. In support of this allegation the defendant refers to his attached affidavit and to the evidence recovered by the police officers."

In his affidavit which was attached to the motion to quash, the defendant swore that he was present at apartment 511, 1380 East Hyde Park Boulevard, on Saturday, November 5 and Sunday, November 6, 1983; that no phone calls were received from persons who identified themselves by a code number or any other number; and that conversations between the alleged confidential informant and a person on telephone line 538-0723, as alleged in the affidavit of Officer Richard Weber, never took place.

Arguments were then heard regarding the granting of an evidentiary hearing. The State objected, but the trial court determined that the defendant's affidavit and motion were sufficient to warrant an evidentiary hearing.

At the evidentiary hearing, Detective Weber testified that all the information within his affidavit was true. He reiterated how a reliable informant whom he had known for two years, and whom had been instrumental in supplying information in 25 separate gambling raids in the past where arrests were made and/or illegal gambling paraphernalia was seized, provided information regarding the instant events. Weber's testimony basically paralleled the allegations contained in his affidavit.

However, upon questions posed by defense counsel, Weber indicated that he did not recall on either day what time or where he met the informant. He also did not recall at what time or where the telephone conversations took place.

Weber also testified that he did not recall the exact circumstances under which he met the confidential informant two years before. Further, the informant did not tell him the name of the person with whom he made the bets. Weber did not remember whether or not he ever asked the informant the name of the person with whom he made the bets. Also, Weber did not believe the informant ever told him

where he paid his losses and recovered his winnings.

Weber also testified concerning the physical evidence seized during the search. He stated that there were two long columns on defendant's exhibit E. The columns had a list with a total of 56 names, seven names with numbers and only two numbers 45 and 125. The identification by numbers is significant, in that Weber stated in his affidavit that the informant placed his bet by using a code number. Weber indicated that with respect to the names with numbers, the numbers could either be identifying numbers or amounts owed. Further, Weber testified that based on defendant's exhibit E, it appeared that 45 had some transactions on Saturday, November 5, 1983, Sunday, November 6, 1983, and Monday, November 7, 1983, the same dates which Weber swore in his affidavit that his informant placed bets. Likewise, Weber stated that 125 apparently had transactions on Saturday and Monday, but no transactions on Sunday.

Weber also testified that after the execution of the warrant, he and his supervisor-sergeant remained in the apartment and took bets over the phone. He recorded these bets on a piece of paper marked and identified by the defendant as defendant's exhibit G. Weber testified that none of the callers identified themselves by a number. Further, Weber could not tell by looking at the physical evidence whether any of the papers showed the bets that were made by his confidential informant on November 5 and 6, 1983.

The defendant then testified. After examining defendant's exhibit E, the defendant stated that all of the names and numbers listed on the exhibit, there were only two numbers, 45 and 125. He then stated that Nos. 45 and 125 were men that he knew from previous bets and that neither man ever identified himself over the telephone as 45 or 125. The defendant stated that he was able to identify both these men through voice recognition. He indicated further that, as to the numbers with names listed on defendant's exhibit E, the numbers represented the amount people owed from previous bets and did not represent any individuals. The defendant also testified that by looking at defendant's exhibit E, he could tell that the numbers and dates of bets did not coincide with the information contained in Weber's affidavit.

He also stated that with respect to defendant's exhibit G, the betting sheet prepared by Weber in the defendant's apartment after his arrest, the bets taken contained points and point spreads the could not have been made for that particular night. He further stated that there was a name on that sheet that the defendant had never done business with before.

The trial court then indicated that after reading the documents and listening to the testimony of Detective Weber and the defendant, it found that there was a total lack of corroboration between what the warrant indicated on its face and the testimony heard in court. Accordingly, the trial court granted defendant's motion to quash the search warrant and to suppress the evidence seized.

On appeal, the State contends that the defendant failed to make the requisite substantial preliminary showing under *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, in order to be granted an evidentiary hearing to challenge Detective Weber's affidavit.

In *Franks*, the United States Supreme Court held that under certain circumstances a defendant must be permitted an evidentiary hearing in which he could seek to challenge the truthfulness of factual statements made in an affidavit supporting a search warrant. The court succinctly stated the applicable standards:

> "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing." *Franks v. Delaware* (1978), 438 U.S. 154, 171-72, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2684-85.

The State further notes that in its application of *Franks*, the Illinois courts have consistently held that a *Franks* hearing will not be

granted solely on the basis of an unsupported denial by the defendant of the crucial facts in the affidavit, because to do so would require a hearing pursuant to *Franks* whenever the defendant merely disputes the allegations of the affiant without any indicia that the affidavit contains falsehoods attributable to the affiant. See *People v. Martine* (1985), 106 Ill. 2d 429; *People v. George* (1984), 126 Ill. App. 3d 1, 466 N.E.2d 1242; *People v. Rodriguez* (1983), 119 Ill. App. 3d 575, 456 N.E.2d 989; *People v. Kelly* (1983), 118 Ill. App. 3d 794, 455 N.E.2d 826; *People v. Cruz* (1982), 111 Ill. App. 3d 95, 443 N.E.2d 769; *People v. Coleman* (1980), 91 Ill. App. 3d 646, 415 N.E.2d 553; *People v. Anderson* (1979), 74 Ill. App. 3d 363, 392 N.E.2d 938.

In *Martine*, the most recent decision in Illinois regarding *Franks*, the defendant was charged with and convicted of possession with intent to deliver controlled substances as a result of evidence seized pursuant to a warrant issued on the basis of a police officer's affidavit. The officer swore that a reliable informant told him that he purchased cocaine from the defendant on a particular day. The defendant filed motions to quash the search warrant and to suppress the evidence seized. In support of her motion, the defendant supplied three affidavits. One was her own in which she denied that an informant purchased cocaine from her on the date specified by the officer in his affidavit. She also stated that three men had been on the premises doing work on the date in question and that all three would testify that no one appeared to purchase cocaine or anything else. Two of the three men also supplied affidavits which stated that they had been in and out of the defendant's premises on the date in question and neither of them saw the defendant sell any drugs. The trial court then denied the defendant's motions and refused to order a *Franks* hearing. The appellate court reversed. The Illinois Supreme Court affirmed the trial court as to the *Franks* issue.

In its decision, the Illinois Supreme Court held that the affidavits on which the defendant relied did not make the substantial preliminary showing that *Franks* requires to overcome the presumption of validity which attaches to the affidavit supporting the search warrant. The court found that because the men working on the premises had been in and out, their affidavits did not negate the possibility that the purchase of which the police officer stated he was informed occurred while they were away from the premises. Further, their affidavits did not indicate that while they were on the premises they were in a position to observe if anyone was elsewhere on the premises. Finally, the Illinois Supreme Court found that the defendant's affidavit did not explain how she could not have sold the cocaine as alleged by the offi-

cer. The court concluded by stating that "[t]he defendant's attack on the warrant affidavit shows nothing more than her desire to engage in discovery and to cross-examine [the officer]." *People v. Martine* (1985), 106 Ill. 2d 429, 436.

However, the defendant maintains that the instant case is controlled by *People v. Garcia* (1982), 109 Ill. App. 3d 142, 440 N.E.2d 269, *cert. denied* (1983), 460 U.S. 1040, 75 L. Ed. 2d 792, 103 S. Ct. 1433. In *Garcia*, a search warrant was issued as a result of a police officer's affidavit containing information from an undisclosed informant. Prior to trial, the defendant moved to suppress the evidence obtained from the search on the basis that the warrant was illegally obtained. The defendant claimed that the police officer's affidavit was knowingly and intentionally false. The defendant did not limit his challenge merely to specific allegations in the police officer's affidavit, but rather, the defendant challenged the integrity of the oath of the officer as to the entire affidavit. The trial court denied the defendant's motion.

On appeal, the reviewing court reversed the trial court holding that the defendant's affidavit specifically denied each allegation in the police officer's affidavit. The defendant's affidavit also provided supporting proof in the form of specific facts that directly contradicted allegations contained in the officer's affidavit. Specifically, the police officer alleged that a Cadillac bearing a particular license plate was observed parked in front of the defendant's apartment on a certain day at a certain time. However, the defendant's affidavit stated that he was enroute in that automobile from his home in Florida at the time and date specified by the officer. Further, the defendant's affidavit was sufficiently detailed to subject him to a charge of perjury.

■■ In the instant case, the defendant has failed to make the requisite substantial preliminary showing pursuant to *Franks*. The defendant's affidavit is only an unsubstantiated denial of Detective Weber's allegations. Further, on its face, the physical evidence referred to in the defendant's motion does not show that Detective Weber's allegations were deliberately false or in reckless disregard for the truth. The affidavit in the case at bar does not categorically contradict Detective Weber's allegations as did the defendant's affidavit in *Garcia*. Further, as was clearly set forth in *Martine*, it is necessary for the defendant not only to deny the allegations in the affidavit supporting the search warrant, but also to provide convincing proof that such allegations could not have taken place. The defendant in the instant case has failed to make such a showing. Accordingly, the trial court erred when it granted the defendant a *Franks* hearing.

■ The next inquiry by this court is whether the defendant proved his allegations of perjury or reckless disregard for the truth. The standard applied once a hearing is granted is set forth in *Franks* where the court stated:

"In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." (*Franks v. Delaware* (1978), 438 U.S. 154, 156, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2676.)

The State contends that the defendant did not prove his allegations of perjury or reckless disregard for the truth by a preponderance of the evidence as required by *Franks* and a recent Illinois Supreme Court case. See *People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840, *cert. denied* (1985), 471 U.S. ___, 86 L. Ed. 2d 283, 105 S. Ct. 2666.

At the suppression hearing the trial court, the same trial court which issued the search warrant, read the documents seized during the search and heard the testimony of Detective Weber and the defendant. The court concluded that there was a total lack of corroboration between what the warrant indicated on its face and the testimony heard in court.

In ruling on a motion to suppress, it is the court's province to determine the credibility of witnesses and weight to be given their testimony, and its finding will not be disturbed on review unless contrary to the manifest weight of the evidence. (*People v. Myers* (1978), 66 Ill. App. 3d 934, 384 N.E.2d 516.) The reviewing court should affirm the conclusion of the trial court unless its decision is manifestly erroneous. *People v. Mullens* (1978), 66 Ill. App. 3d 748, 383 N.E.2d 1369.

In the instant case, the testimony of the affiant of the search warrant, Detective Weber, presented several areas which raised serious doubts as to his credibility. Weber indicated that the informant did not identify the recipient of the bets nor did he inquire of the informant where he paid his losses or collected his winnings. Further, Detective Weber was unable to identify from the exhibits the bets placed by the informant. These factors alone were sufficient for Justice Schaeffer, when evaluating the evidence in a similar case, *People v. Mitchell* (1970), 45 Ill. 2d 148, 258 N.E.2d 345 (Schaefer, J., dissenting), *cert. denied* (1970), 400 U.S. 882, 27 L. Ed. 2d 120, 91 S. Ct. 117, to find that the officer's testimony was inherently incredible. In the case at

bar, Detective Weber was also unable to recall where the informant made the telephone calls and the circumstances under which he originally met the informant. Therefore, based on all the above circumstances which tend to present an inherently incredible story, the trial court's determination that the defendant proved by a preponderance of the evidence his allegation of perjury or reckless disregard for the truth was not manifestly erroneous.

However, the instant case creates a dilemma for this court. We have previously determined that the trial court improperly granted the defendant a *Franks* hearing. We also have determined that after the hearing, based on the testimony heard and the evidence received, the trial court's finding that the defendant had proved his allegations of perjury or reckless disregard for the truth was not manifestly erroneous. Therefore, we are now confronted with the situation wherein at an, albeit, improperly granted hearing, the evidence adduced established that Detective Weber's affidavit contained material falsehoods. Thus, fraud had been perpetrated against the court. The question now facing this court is what consideration do we give to that evidence that was received at a hearing that never should have been held.

The State argues that since the trial court erred in granting a *Franks* hearing, everything subsequent to the improperly granted hearing should not be considered. However, the defendant argues that this court cannot turn its back to a fraud that has been committed against the court.

■■ We recognize that under the current procedural rules the State is unable to seek review of a trial court's decision regarding the holding of a *Franks* hearing until such a hearing has already been held. However, as in the instant case, we cannot reward the State by reversing the trial court as to the granting of a *Franks* hearing and then simply disregard the fraud on the court. We believe this court has the inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction. (See 20 Am. Jur. 2d *Courts* sec. 78 (1965).) A court is the protector of the purity of its process and may take such steps as are necessary to protect against its abuse. (*Pueblo DeTaor v. Archuleta* (10th Cir. 1933), 64 F.2d 807.) In the case at bar, Detective Weber's fraudulent affidavit represented misconduct that was an abuse of the court's process, and thus we will exercise our inherent powers to protect against such an abuse by considering the evidence received as a result of an improperly granted hearing.

■■ Another issue briefly discussed by the State is that even if all the false allegations of Detective Weber are excised, there is still suf-

ficient material to establish probable cause. (See *People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840, *cert. denied* (1985), 471 U.S. ___, 86 L. Ed. 2d 283, 105 S. Ct. 2666.) However, given the fact that the defendant challenged each of Detective Weber's allegations, once each of those allegations is excised, there is nothing remaining in his affidavit with which to consider the issue of probable cause.

Likewise, given the trial court's determination that Detective Weber's affidavit contained false statements that went directly to the heart of the warrant, this court must also reject the State's final argument that there was a good faith basis for the warrant pursuant to *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405.

Therefore, based on the foregoing the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.