THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
MAURICE L. PORTER, Defendant-Appellee.

Fifth District   No. 5—84—0115

Opinion filed February 26, 1986.

HARRISON, J., dissenting.

William A. Schuwerk, Jr., State's Attorney, of Chester (Kenneth R.
Boyle, Stephen E. Norris, and Susan M. Young, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Randy E. Blue and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Defendant Maurice L. Porter was charged by information with possession of cannabis and residential burglary, after police executed a search warrant at his residence. The circuit court of Randolph County granted defendant's motion to quash the search warrant and to suppress evidence found in the search. The State appeals. We reverse and remand.

Witnesses at the February 15, 1984, hearing on the above motions were sheriff's deputy Lyndon Thies and Sparta Officer David Stine. Jacqueline Wallace, who resided with defendant on the date in question, also testified. Deputy Thies testified as follows: On December 28, 1983, Kenneth Bouas reported a burglary of his apartment. Bouas described several articles that had been taken. Bouas' and defendant's apartments were 15 to 20 feet apart. The ground was covered with snow. Shoe prints led from Bouas' apartment to defendant's. In the early morning hours of December 29, Officer Rick Wadlow asked defendant for permission to enter defendant's apartment. "He told us we could come in and look around. He didn't want us moving anything around. Wadlow and Thies entered the apartment at once; Stine entered later. On a nightstand, Thies saw a glass jar containing seeds. Thies believed the seeds were cannabis seeds, based on his "many" observations of cannabis and cannabis seeds in nearly three years as a deputy. In the living room. Thies saw an ashtray on a table in front of a couch; in the ashtray were seeds and small cigarette butts ("roaches"), which, based on his experience, Thies believed to be cannabis. Thies returned the next day to execute the search warrant. In defendant's bedroom, the officers found several items which they believed were taken from Bouas' residence; they summoned Bouas to defendant's residence, where Bouas identified some of the items as his. The officers seized these items, as well as cannabis which they found hidden in defendant's bed, and several bottles of seeds.

Officer Stine testified as follows: On December 29, 1983, in the early morning, defendant gave the officers "permission to come in the apartment and look around." Stine saw a metal can on a coffee table in the living room. A lid was on the can. Stine "just slid it back." Inside was a "dark bottle" which contained what he believed to be cannabis seeds, based on his nine years as an officer, his experience in "several drug cases," and seminars he had attended on the subject.

He touched nothing inside the can. On the same table was an ashtray containing what he believed to be cannabis seeds and "roaches."

Ms. Wallace testified that she was present when defendant allowed the officers to enter the apartment. According to Wallace, there was a lid on the metal can, and no cannabis in the ashtrays; one could not see inside the bottle which was in the can without opening the bottle.

Officer Stine was the complainant with respect to the search warrant. Stine's complaint described the things to be seized as cannabis, cannabis plants, cannabis seeds, controlled substances, and drug paraphernalia. The complaint stated the supporting facts in pertinent part as follows:

"The officers asked Porter if they could enter and look around ***. Maurice Porter consented and all three officers entered the apartment. Officer Stine observed on the coffee table located in the living room a metal can. Inside the metal can, Stine observed three plastic pill bottles containing what appeared to him to be cannabis seeds. Also in the metal can, Stine observed what is commonly called a roach clip used in smoking cannabis and a pipe which the officer observed had what appeared to be cannabis residue in it."

In granting defendant's motions to quash the search warrant and suppress the evidence seized, the court found that the complaint for search warrant was based on a previous illegal search of the premises; that the contents of the metal can were not in plain view; that defendant's consent for the officers to enter the apartment did not include consent to search; and that Stine's moving the can lid constituted an unlawful search under the circumstances: "[A]pparently there was sufficient evidence for a valid search warrant to be issued; but it didn't make its way into the four corners of the complaint."

■ The State argues that the officers received defendant's consent to search. However, the issue on appeal is whether the court's finding that defendant did not consent is unreasonable. Consent waives the warrant requirement only to the extent granted by defendant in his consent. A consent search is reasonable only if kept within the consent. (*People v. Sanders* (1976), 44 Ill. App. 3d 510, 514, 358 N.E.2d 375, 378-79.) The court's finding that defendant did not consent is justified by Deputy Thies' uncontradicted testimony that defendant "didn't want us moving anything around." That defendant meant what he said is at least as justifiable as the opposite conclusion urged by the State.

■ The State argues that the contents of the metal can were in plain view and therefore subject to seizure. This court will not disturb the trial court's determination of factual matters in a hearing on a motion to suppress unless manifestly erroneous. (*People v. Free* (1983), 94 Ill. 2d 378, 401, 447 N.E.2d 218, 229, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200.) Ms. Wallace testified that there was a lid on the can. Officer Stine's testimony that he removed the lid to see inside implies that he could not see inside otherwise. No one testified that the officers could see inside the can without removing the lid. The court's finding that the contents of the can were not in plain view is supported by the evidence.

■ The State argues that the officers had probable cause to search defendant's apartment because they saw cannabis (other than in the metal can) in plain view. We agree. The trial court's statement that "there was sufficient evidence for a valid search warrant to be issued ***," shows the trial court's acceptance of the officers' testimony regarding the contends of the ash tray. Accepting the officers' testimony in this regard as true, the officers had probable cause to search the entire apartment. (See *People v. Knight* (1985), 133 Ill. App. 3d 248, 260, 478 N.E.2d 1082, 1092; *People v. Bell* (1972), 53 Ill. 2d 122, 127, 290 N.E.2d 214, 217.) They needed no search warrant. The United States Supreme Court has stated that requiring police to obtain a warrant once they have obtained a first-hand perception of contraband would be a "needless inconvenience." (*Texas v. Brown* (1983), 460 U.S. 730, 739, 75 L. Ed. 2d 502, 511-12, 103 S. Ct. 1535, 1541.) Since the police were authorized to search without a warrant, no legitimate interest protected by the fourth amendment is served by suppressing the evidence seized based on technical defects in the procurement of the unnecessary warrant.

■ The State also argues that if the search was technically invalid, exclusion was not the proper remedy. The United States Supreme Court recently stated: "Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendant offends basic concepts of the criminal justice system." (*United States v. Leon* (1984), 468 U.S. 897, 907-08, 82 L. Ed. 2d 677, 688-89, 104 S. Ct. 3405, 3413.) Thus, "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." (468 U.S. 897, 918, 82 L. Ed. 2d 677, 695, 104 S. Ct. 3405, 3419.) In the case at bar, the officers' "transgressions" were minor at most, as they related to obtaining an

unnecessary warrant. Under those circumstances, we cannot justify applying the harsh remedy of the exclusionary rule, for "the magnitude of the benefit conferred [on the accused] offends basic concepts of the criminal justice system" (468 U.S. 897, 908, 82 L. Ed. 2d 677, 689, 104 S. Ct. 3405, 3413) compared to the officers' minor errors.

For the foregoing reasons, the order of the circuit court of Randolph County granting defendant's motion to quash the search warrant and to suppress the evidence seized in the course of the search is reversed; this cause is remanded for further proceedings.

Reversed and remanded.

JONES, J., concurs.

JUSTICE HARRISON, dissenting:
I respectfully dissent.

The majority simply states that because the police saw cannabis seeds in plain view in the ashtray, they had probable cause to search the rest of the apartment, including the metal can, even without a warrant. If police have probable cause to search a house but have not obtained a warrant, the search must fall within one of the narrow and specifically delineated exceptions to the warrant requirement. (Thompson v. Louisiana (1984), 469 U.S. 17, 20-21, 83 L. Ed. 2d 246, 250, 105 S. Ct. 409, 411.) The majority is unable to identify any such exception, because none applies in this case. The United States Supreme Court in Thompson and Mincey v. Arizona (1978), 437 U.S. 385, 57 L. Ed. 2d 290, 98 S. Ct. 2408, rejected the contention that there is a "murder scene exception" to the warrant requirement. In both cases, the court found that even though a murder had been committed and police were lawfully on the premises, they could not conduct unlimited searches absent exigent circumstances. If the evidence that a murder has been committed does not permit police to search for other evidence absent exigent circumstances, then surely evidence of illegal possession of cannabis does not permit police to search defendant's entire apartment, including the metal can, in the present case. The record indicates no exigent circumstances, and the State has not argued any existed.

Furthermore, the majority states the following as its holding: "Since the police were authorized to search without a warrant, no legitimate interest protected by the Fourth Amendment is served by suppressing the evidence seized based on technical defects in the procurement of the unnecessary warrant." Even if one assumed the

search of the metal can during the first entry without a warrant was permissible, the majority's conclusion that a search warrant was not necessary to discover the stolen property during the second search is groundless. The majority holds that the police could have lawfully searched for and found the stolen property during their first visit to the apartment, after they saw the cannabis seeds in plain view in the ashtray. But the officers did not do so. Instead, they left the apartment, obtained the search warrant, and returned the next day. Once they left the apartment the first time, they needed a warrant to reenter, unless defendant again gave consent to their entry. Thus, the warrant *was* necessary.

That a warrant was obtained does not save the case, however, because that warrant was based upon an illegal search of the metal can. Logic and good conscience require that a search warrant based on illegally obtained information should be invalid as contrary to the protection afforded all citizens by the fourth amendment. The United States Supreme Court in *United States v. Karo* (1984), 468 U.S. 705, 719, 82 L. Ed. 2d 530, 544, 104 S. Ct. 3296, 3305, stated that information illegally obtained which was included in a warrant affidavit would invalidate the warrant if it proved to be critical to establishing probable cause for the issuance of the warrant. (See also *People v. One 1968 Cadillac Automobile VIN #J8316714* (1972), 4 Ill. App. 3d 780, 788, 281 N.E.2d 776, 782.) In the present case, the illegally obtained evidence was the *only* information used to establish probable cause. Thus, the warrant must be invalid.

It may be true that the officers had other legally obtained information which amounted to probable cause. However, the court in *Karo* held that a warrant issued pursuant to an affidavit containing illegally obtained information would be valid "if sufficient untainted evidence was *presented in the warrant affidavit* to establish probable cause." (Emphasis added.) (*United States v. Karo* (1984), 468 U.S. 705, 719, 82 L. Ed. 2d 530, 544, 104 S. Ct. 3296, 3305. See also *People v. Free* (1983), 94 Ill. 2d 378, 399, 447 N.E.2d 218, 228-29, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200.) Here, the untainted information was within the officers' knowledge, but was not presented in the warrant affidavit.

I also feel compelled to address the majority's reference to the good faith exception of *Leon*. That decision held the exclusionary rule to be inapplicable to cases where the police reasonably rely on a facially valid search warrant. The court in *Leon* did not address the issue of a warrant affidavit containing illegally obtained information. However, the decision in *Leon* suggests an answer to the question be-

fore us. The court's justification for this good faith exception was that the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Consequently, where there is no police misconduct, the purposes of exclusionary rule are not served. (*United States v. Leon* (1984), 468 U.S. 897, 918, 82 L. Ed. 2d 677, 695, 104 S. Ct. 3405, 3419.) In *Leon*, the facts as stated did not involve any police misconduct, but the court, in setting out the good faith exception, indicated that if the conduct of the police is in any way improper or unreasonable, the exclusionary rule would still apply. In the present case, the initial search of the metal can was illegal. That search was not conducted pursuant to a search warrant. The purposes of the exclusionary rule would be furthered here by exclusion, because it would serve to deter the police from conducting other such illegal searches and from illegally obtaining information for warrant affidavits. See also *People v. Joseph* (1984), 128 Ill. App. 3d 668, 470 N.E.2d 1303 (rejecting *Leon* argument and finding exclusion proper due to inaccuracy in police computer information).

The court in *Leon* stated the good faith exception will not automatically apply simply because the police obtain a facially valid warrant and abide by its terms. (*United States v. Leon* (1984), 468 U.S. 897, 922, 82 L. Ed. 2d 677, 698, 104 S. Ct. 3405, 3421.) There are exceptions to the good faith exception. One such exception is if the police were dishonest or reckless in preparing their affidavit. (468 U.S. 897, 926, 82 L. Ed. 2d 677, 701, 104 S. Ct. 3405, 3423.) See also *People v. O'Neill* (1985), 135 Ill. App. 3d 1091, 1101, 482 N.E.2d 668, 675.) Omissions of material information have been held to come under this exception. (See *People v. Stewart* (1984), 105 Ill. 2d 22, 43, 473 N.E.2d 840, 850, *cert. denied* (1985), 471 U.S. 1131, 86 L. Ed. 2d 283, 105 S. Ct. 2666; *People v. Reynolds* (1980), 96 Ill. App. 3d 79, 82, 420 N.E.2d 1193, 1196.) The majority has set out the material portions of the warrant affidavit. Missing from this affidavit are two important factors: defendant told the officers that he did not want them to move anything around, and an officer in fact moved the lid on the metal can to observe its contents. The court considering the warrant application could have easily found that this was an illegal search had it had all the facts. Omitting these facts perhaps was dishonest, but was certainly at least reckless.

For the foregoing reasons, I would affirm the trial court's granting of defendant's motion to quash the search warrant and suppress the evidence found in the search conducted pursuant to that warrant.