THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
AUGUSTA ZYMANTAS, Defendant-Appellant.

First District (5th Division)   No. 83—1361

Opinion filed August 29, 1986.

Bryan David Schultz, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Jeanette Sublett, and Nicholas Geanopoulos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PINCHAM delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, the defendant, Augusta Zymantas, was found guilty of syndicated gambling (Ill. Rev. Stat. 1981, ch. 38, pars. 28—1(a), (d)) and sentenced to two years' probation. He appeals. The following facts gave rise to his conviction and appeal.

On April 15, 1982, Chicago police officer Patrick Chambers subscribed and swore to a complaint for a search warrant. The complaint prayed for the issuance of a search warrant to search "August Zymantas M/W and 6157½ North Leavitt Avenue *** Chicago, Illinois, County of Cook, and seize *** Sports Wagers, Sport Lines, Slough Sheets all USC co-mingled with gambling contraband and all other related gambling material used or kept for illegal gambling and *Illinois Bell Telephone #274-4967*." (Emphasis added.)

Officer Chambers alleged, under oath, in the complaint for the

search warrant[1] that on April 14, 1982, a reliable informant told him that he had placed basketball wagers with a male known to him as "Augie" over *"Illinois Bell Telephone #274-4967,"* that he overheard the informer placing wagers over telephone number 274-4967 on April 14 and 15, 1982, and that *"[t]he affiant checked with Illinois Bell Telephone Security, and found that Illinois Bell Telephone #274-4967 is register[ed] to August Zymantas at 6157½ N. Leavitt Ave.,* house in the City of Chicago, County of Cook, State of Illinois." (Emphasis added.)

The judge to whom the complaint was presented ordered that the search warrant issue. Armed with the search warrant, at about 7 p.m. on April 16, 1982, police officers Chambers, Fera and Mokery went to 6157½ North Leavitt. Upon arrival, but before entering the premises, the officers knocked on the door and through the door window they observed Zymantas in the kitchen talking on the telephone and writing in a large brown spiral notebook. When Zymantas heard the knock, he hung up the phone, closed the notebook and walked to the door. Chambers announced his office, and Zymantas opened the door. Chambers handed Zymantas a copy of the search warrant, which Zymantas read. The three officers walked into the kitchen. Chambers opened the notebook and found that it contained sports wagers. Chambers then placed Zymantas under arrest.

Chambers retrieved two gambling publications, Doc's Sports Journal and Sports Journal, from the kitchen table. The officers also seized an orange notebook, a small tape recorder and a cassette on which was recorded male and female voices accepting and giving sports wagers. Subsequently, Zymantas was charged in an indictment with the syndicated gambling offenses.

Zymantas filed a pretrial motion to quash the search warrant and suppress the evidence which asserted that there was no probable cause for the issuance of the search warrant, that the warrant was based on uncorroborated hearsay information and that the search warrant did not particularly describe the place or person to be searched. When the motion was heard on October 15, 1982, Zymantas' attorney argued that the warrant failed to particularly describe the premises to be searched. The trial court responded:

"But the complaint says that *the phone was registered to 6157½ North Leavitt,* a house in the city of Chicago." (Emphasis added.)

---

[1]Officer Chambers' sworn allegations in the complaint for the search warrant are set forth in Appendix I.

The defense attorney further argued that the complaint for the search warrant and the search warrant itself did not particularly describe the person to be searched and that "Augie," referred to in the complaint for the search warrant, was not otherwise identified. Thereupon, the following colloquy occurred:

"THE COURT: But it was rational to assume that *the Augie who spoke on the telephone is the Augusta Zymantas to whom the telephone is registered.*

MR. CARROLL [defense attorney]: So the court would rely in fact that *the phone is registered—*

THE COURT: *To Augusta Zymantas,* who is called by caller, 'Augie.' " (Emphasis added.)

The trial court rejected the defendant's contention that the complaint for the search warrant and the search warrant were invalid because they did not particularly describe the place and person to be searched and denied the motion to quash the search warrant. Thus, it appears that in denying the motion the trial court relied on the veracity of the allegations in the complaint and search warrant that telephone number 274-4967 was registered by Illinois Bell Telephone to Augusta Zymantas at 6157½ North Leavitt.

Zymantas' attorney then informed the court of his intention to file a motion to quash the search warrant, for an evidentiary hearing to challenge the veracity of the allegations of the complaint for the search warrant pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, and for production of the undisclosed informant.

In his *Franks* motion,[2] Zymantas asserted that Officer Chambers' "undisclosed informer" did not exist and that Chambers' sworn statements in his complaint for the search warrant were "false statements knowingly and intentionally [made] with reckless disregard for the truth." Zymantas' motion specifically denied "that officer Chambers checked with Illinois Bell Telephone and then determined that the telephone [was] listed to August Zymantas." The motion was supported by Zymantas' affidavit[3] in which Zymantas swore that he was employed away from home on April 14 and 15, 1982, and in which he denied that he received a telephone call or accepted wagers on basketball games on those dates. Zymantas further swore in his affidavit:

"That before, during and after 14 and 15 April 1982, *I was*

---

[2]Zymantas' motion to quash the search warrant and to produce the informant is set forth in Appendix II.

[3]Zymantas' affidavit is set forth in Appendix III.

*never the subscriber of Illinois Telephone number 274-4967.* (See Exhibit #1 attached)." (Emphasis added.)

Exhibit #1 referred to in Zymantas' affidavit were Illinois Bell telephone bills for the period involved for telephone number 274-4967 at 6157½ North Leavitt. These telephone bills were not in Zymantas' name. These telephone bills and Zymantas' affidavit directly contradicted Officer Chambers' sworn statement in the complaint for the search warrant that he:

> "checked with Illinois Bell Telephone Security, and found that Illinois Bell Telephone #274-4967 is register[ed] to August Zymantas at 6157½ N. Leavitt Ave., house in the City of Chicago, County of Cook, State of Illinois."

On November 23, 1982, defendant's attorney argued the *Franks* motion to quash the search warrant and for production of the undisclosed informer and stated to the court:

> "We will have a Franks motion, which was filed, and *I would ask the opportunity to present evidence,* and the court will rule on that." (Emphasis added.)

Defense counsel further stated to the trial court, "We would encourage the court to follow the Garcia case [*People v. Garcia* (1982), 109 Ill. App. 3d 142, 440 N.E.2d 269] even though it is up on appeal." The trial court responded, "The court feels that this is not the law, and never will be the law in this State."

In his request for an evidentiary hearing to challenge the allegations in Chambers' complaint for the search warrant, defendant's attorney relied on Zymantas' sworn denial that he had accepted wagers. Defendant's attorney additionally relied on Officer Chambers' sworn statement in his complaint that he "checked with Illinois Bell Telephone Security, and found that Illinois Bell Telephone #274-4967 is register[ed] to August Zymantas at 6157½ N. Leavitt," Zymantas' affidavit that telephone number 274-4967 was not registered to him, and telephone bills for telephone number 274-4967 for the period involved which were not in the name of Augusta Zymantas.

Defense counsel repeatedly requested a hearing to establish what he characterized as Chambers' deliberate and knowing falsehoods in his complaint for the search warrant.[4] The trial court denied defense counsel's requests for an evidentiary hearing[5] and stated that the fact

---

[4]Defense counsel's repeated requests for an evidentiary hearing to challenge the veracity of Officer Chambers' allegations in the complaint for the search warrant are set forth in Appendix IV.

[5]The trial court's response to defense counsel's request for an evidentiary hearing is set forth in Appendix V.

that telephone number 274-4967 was not registered to the defendant by Illinois Bell was *"a matter of very small consequence."* (Emphasis added.)

At trial, over the defendant's timely objection, the articles seized in execution of the search warrant were admitted as evidence against him and he was found guilty of syndicated gambling. On this appeal, defendant contends for reversal that the trial court erred in denying him an evidentiary hearing to controvert the veracity of the complaint for the search warrant, in denying his motion to quash the search warrant and in refusing to suppress as evidence the articles seized in execution of the search warrant. We reverse.

The fourth amendment to the Constitution of the United States provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., amend. IV.) This constitutional provision is made binding upon and applicable to the States by the due process clause of the fourteenth amendment. U.S. Const., amend. XIV; *Mapp v. Ohio* (1961), 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684.

It is provided in article I, section 6, of the Constitution of the State of Illinois that "[t]he people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the person or things to be seized." Ill. Const. 1970, art. I, sec. 6.

Pursuant to these constitutionally guaranteed rights of privacy, the defendant filed a motion to quash the search warrant and suppress the evidence on the grounds that the warrant did not particularly describe the premises or person to be searched, as required by the aforesaid constitutional provisions. This motion was denied. The defendant also filed a motion to quash the search warrant and for an evidentiary hearing on the ground that Officer Chambers' sworn statement to establish probable cause in the complaint for the search warrant that he "checked with Illinois Bell Telephone Security, and found that Illinois Bell Telephone #274-4967 is register[ed] to August Zymantas at 6157½ N. Leavitt," was a knowing and intentionally false statement and was made with reckless disregard for the truth.

As previously pointed out, on October 15, 1982, in overruling Zy-

mantas' motion to quash the search warrant, the trial court relied on Officer Chambers' sworn allegations in the complaint for the search warrant that telephone number 274-4967 was registered in the name of Augusta Zymantas. Five weeks later, on November 23, 1982, the trial court denied the defendant an evidentiary hearing to controvert these allegations in Chambers' affidavit. The defendant contended that Officer Chambers' sworn statement in the complaint for the search warrant that he "checked with Illinois Bell Telephone Security, and found that Illinois Bell Telephone #274-4967 is register[ed] to August Zymantas at 6157½ N. Leavitt," was a deliberately false statement. In denying defendant an evidentiary hearing, the trial court stated that registration of that phone number in a name which was not the defendant's name was *"a matter of very small consequence."* (Emphasis added.)

When the court rejected the defendant's contention that the search warrant did not particularly describe the person and place to be searched and denied the defendant's motion to quash the search warrant, the trial court relied on the accuracy and veracity of the allegations of the complaint for the search warrant that Officer Chambers had "checked with Illinois Bell Telephone Security and found that *** Telephone #274-4967 [was] register[ed] to August Zymantas." This reliance was misplaced because this telephone number, the record subsequently established, was not registered to the defendant. Based on this contradiction, which the defendant characterized as a deliberate falsehood given with reckless disregard for the truth by Officer Chambers, and in reliance on the defendant's sworn denials that he had received or taken a bet, the defendant requested an evidentiary hearing to refute the allegations in Officer Chambers' affidavit. The trial court denied the defendant's request for an evidentiary hearing and in effect stated that it was irrelevant that Officer Chambers' complaint for the search warrant falsely under oath stated that he checked with Illinois Bell Telephone and found that telephone number 274-4967 was registered in the defendant's name.

This reasoning by the trial court avoided the issue raised by the defendant in his motion for an evidentiary hearing. The defendant did not request an evidentiary hearing to establish the relevancy of the distinction between the name to whom the complaint alleged the telephone number was registered and the name to whom the telephone number was in fact registered with the phone company. Rather, the defendant sought an evidentiary hearing to establish that Officer Chambers did not tell the truth when he swore in his complaint that he checked with Illinois Bell security and found that telephone num-

ber 274-4967 was registered in the name of the defendant and that this false statement was deliberate and made with reckless disregard for the truth. Thus, the defendant contended the warrant lacked integrity and probable cause.

In *People v. Bak* (1970), 45 Ill. 2d 140, 258 N.E.2d 341, a case of first impression, our supreme court was presented with the question of whether a defendant has a constitutional right to look behind a search warrant which is valid on its face and to present evidence challenging the truthfulness of the allegations of fact on which the warrant was issued. In *Bak*, the defendant, in his motion to quash the search warrant and to suppress the evidence seized in the execution of the search warrant, sought an evidentiary hearing to prove, contrary to the allegations in the complaint for the search warrant, that the informer was not reliable and that other allegations made by the affiant were not true. The court pointed out that the Supreme Court of the United States had not ruled on that question. The court pointed out further that "it would appear that a majority of the jurisdictions which have considered the question have concluded that matters alleged under oath, upon which a search warrant was issued, may not be disputed by the one against whom or against whose property the warrant has been directed," but that other courts "have favored a contrary view." (45 Ill. 2d 140, 143, 258 N.E.2d 341.) The court concluded that "[t]he majority of the members of this court prefer the view that the matters declared which caused the search warrant to be issued may not be contested by one subjected to the search." 45 Ill. 2d 140, 144, 258 N.E.2d 341.)

An expressed concern by the court in *Bak* in disallowing a defendant an evidentiary hearing to controvert the allegations of a complaint for a search warrant was that such a hearing "would unnecessarily permit a collateral and distracting evidentiary dispute." (*People v. Bak* (1970), 45 Ill. 2d 140, 147, 258 N.E.2d 341.) The eloquent dissent of Mr. Justice Ward in *Bak*, which, as this opinion points out, later became the law on this subject, responded to the majority's concern:

> "It is certainly contemplated that testimony or other evidence to be offered in a judicial proceeding shall be truthful \*\*\*. \*\*\* [I]f false evidence has been presented it may be exposed, so that an erroneous finding may be set aside. It seems to me that the integrity of the search warrant procedure requires that one who complains that false evidence has been introduced to his detriment should be given the opportunity to show this. To me, a refusal, though well intentioned, to permit such a showing diminishes the judicial process.

The position taken by the majority avoids admittedly troublesome problems, but another consequence is that we sacrifice something of first importance." 45 Ill. 2d 140, 148, 258 N.E.2d 341 (Ward, J., dissenting).

On the same day, March 24, 1970, that our supreme court decided *Bak*, it also decided *People v. Mitchell* (1970), 45 Ill. 2d 148, 258 N.E.2d 345. In *Mitchell*, the affidavit of the police officer for a search warrant was practically identical to Officer Chambers' affidavit in the case at bar. Chambers' affidavit additionally asserted, however, that he checked with the telephone company and learned that the number that was called to place the wager was registered to the defendant, whereas the affidavit in *Mitchell* made no such assertion. In all other particulars, the affidavits in *Mitchell* and in the case at bar are substantially the same. Mr. Justice Schaefer's dissenting opinion in *Mitchell* critically refers to these affidavits as " 'boiler plate' affidavits," which to him, because of their similarity and number, "show[ed] an absence of probable cause." (45 Ill. 2d 148, 158, 258 N.E.2d 345.) As will be explained, the position taken in this dissent subsequently became the law of the land.

In *Mitchell*, the defendants contended that they had the right to controvert the statements that were made under oath in the affidavit to establish probable cause for the issuance of the search warrant. Citing *Bak*, the court in *Mitchell* held that "no such right obtain[ed], either under the fourth amendment to the United States constitution, section 6 of article II of the Illinois constitution, or under [the Illinois] Code of Criminal Procedure (see Ill. Rev. Stat. 1967, ch. 38, par. 114—12)." *People v. Mitchell* (1970), 45 Ill. 2d 148, 152, 258 N.E.2d 345.

Mr. Justice Schaefer's dissent in *Mitchell* stated that the basic question was whether the facts of an affidavit relied upon to establish probable cause could be controverted by a defendant once the warrant had issued and had been executed. Justice Schaefer urged that a defendant should have the right to controvert the assertion in the affidavit. He stated:

> "In an atmosphere in which there is widespread concern about narcotics problems it is difficult for a court to enforce constitutional guarantees at the instance of one who is unquestionably guilty. But the constitutional provisions are directed at potential abuses by a tyrannical government and those provisions should not, in my opinion, be so diluted in order to secure convictions in narcotics and gambling cases that they can no longer afford protection against the operations of a Hitler type

government. ***

The constitutional question involved in these cases was deliberately left open by the Supreme Court of the United States in *Rugendorf v. United States* (1964), 376 U.S. 528, 11 L. Ed. 2d 887, 84 S. Ct. 825. The consideration that weighs most heavily in support of the conclusion reached by the majority in these cases is the desire to expedite the disposition of criminal cases. But it is a common characteristic of many constitutional guarantees that they impede the prompt disposition of criminal cases. *** The judicial system is resourceful enough to devise procedures which will prevent abuse of the right to challenge the existence of the facts that were relied upon by the issuing officer to establish probable cause." *People v. Mitchell* (1970), 45 Ill. 2d 148, 156, 258 N.E.2d 345 (Schaefer, J., dissenting).

The holding of the majority of our supreme court in *People v. Bak* (1970), 45 Ill. 2d 140, 258 N.E.2d 341, and *Mitchell* and thereafter a similar holding in *People v. Stansberry* (1971), 47 Ill. 2d 541, 268 N.E.2d 431, were short-lived. The views expressed in the dissenting opinions of Justice Schaefer in *Mitchell* and Justice Ward in *Bak* became the law of the land when the Supreme Court of the United States in *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, resolved the constitutional question that the court left unanswered in *Rugendorf v. United States* (1964), 376 U.S. 528, 11 L. Ed. 2d 887, 84 S. Ct. 825.

In *Franks*, the court stated that the question presented was whether a defendant in a criminal proceeding has the right under the fourth and fourteenth amendments, subsequent to the *ex parte* issuance of a search warrant, to challenge the truthfulness of factual statements made in an affidavit supporting the warrant.

In *Franks*, Mrs. Bailey, who was sexually assaulted, described to the police her assailant's age, race, height, build and facial hair, and gave a detailed description of his clothing as a white thermal undershirt, black pants with a silver or gold buckle, a brown leather three-quarter length coat, and a dark knit cap. She also told the investigating officer that her assailant had a knife.

On that same day, defendant Franks was taken into custody for an unrelated assault. While in custody, Franks became a suspect in the Bailey offense and two detectives submitted their sworn affidavit in support of a warrant to search Frank's home.

The affidavit stated that the description of the assailant that the victim gave the police included the previously mentioned clothing. The officers' affidavit further stated that they contacted James Williams

(Morrison) and Wesley Lucas at the youth center where Franks was employed and that James Williams (Morrison) told the officers that the normal dress of Franks consisted of a white knit thermal undershirt and a brown leather jacket. The officers' affidavit stated that Wesley Lucas told the officers that in addition to the thermal undershirt and jacket, Franks often wore a dark green knit hat.

A search warrant was issued and during its execution, the officers seized a white thermal undershirt, a knit hat, dark pants, a leather jacket and a single blade knife from Franks' home. Prior to trial, Franks submitted a motion to suppress the clothing and knife seized from his home. Franks challenged the veracity of the officers' affidavit. He requested an evidentiary hearing and the right to call as witnesses the police officers who were the affiants for the search warrant and James Williams (Morrison) and Wesley Lucas, who were referred to in the officers' affidavit.

Franks asserted that Williams (Morrison) and Lucas would testify at an evidentiary hearing that neither of them were personally interviewed by either of the officer affiants and that the information given by them to another officer was different from that which was recorded in their affidavit. Franks charged that the officers' false statements in their affidavit were not inadvertent but were in "bad faith."

The trial court denied Franks a hearing. His motion to suppress was also denied. The seized articles were admitted into evidence. Franks was convicted, and the Supreme Court of Delaware affirmed and held that Franks was not entitled to an evidentiary hearing.

The Supreme Court of the United States reversed and held that "where a defendant *** makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by [the] affiant in [the] affidavit ***, and if the allegedly false statement is necessary to the finding of probable cause ***, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware* (1978), 438 U.S. 154, 154-55, 57 L. Ed. 2d 667, 668-69, 98 S. Ct. 2674, 2674.) The court pointed out that the integrity of the affidavit was directly placed in issue by Franks' sworn allegation that the officers did not speak directly to Lucas or Williams (Morrison), as the officers swore in their affidavit they had done. Similarly, in the case at bar, the integrity of the affidavit was directly placed in issue by Zymantas' sworn allegation that Officer Chambers did not check with Illinois Bell Telephone security and that he did not learn that telephone number 274-4967 was registered to the name of the defendant, Augusta Zymantas.

The United States Supreme Court stated in *Franks*:

"Because it is the magistrate who must determine independently whether there is probable cause, [citations], it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment." *Franks v. Delaware* (1978), 438 U.S. 154, 165, 57 L. Ed. 2d 667, 678, 98 S. Ct. 2674, 2681.

The Supreme Court in *Franks* addressed the concerns expressed by the Illinois Supreme Court majority in *People v. Bak* (1970), 45 Ill. 2d 140, 258 N.E.2d 341, and *People v. Mitchell* (1970), 45 Ill. 2d 148, 258 N.E.2d 345, on the undesired diversions created by a post-search evidentiary hearing which challenges the veracity of an affidavit for a warrant. It was also urged in *Franks* that the volume of criminal dockets and the need to prevent distraction from the issue of guilt or innocence militated against the added burden of an evidentiary hearing and, further, that such a hearing could be used as a subterfuge by defendants to learn the identity of informants. The court concluded that these were insufficient reasons to ban such an evidentiary hearing.

The court pointed out that "we are faced today with only the question of the integrity of the affiant's representations as to his own activities" and that "[t]he deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." (*Franks v. Delaware* (1978), 438 U.S. 154, 171, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2684.) Likewise, in the case at bar, we are faced with only the question of the integrity of the affiant's representations as to his own activities. Also in the case at bar, the deliberate falsity and reckless disregard whose impeachment was sought was only that of Chambers and not of any governmental informant.

The court in *Franks* summarized that "[t]o mandate an evidentiary hearing, the challenger's attack *** must be allegations of deliberate falsehood or of reckless disregard for the truth ***. They should point out specifically the portion of the warrant affidavit that is claimed to be false ***." (*Franks v. Delaware* (1978), 438 U.S. 154, 171, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2684.) The defendant in the case before us complied with these prerequisites.

Thirteen months after the Supreme Court's decision in *Franks*, this court decided *People v. Anderson* (1979), 74 Ill. App. 3d 363, 392 N.E.2d 938. In *Anderson*, the complaint for the search warrant was supported by the affidavits of an informant, Illinois State police offi-

cer Bill Willis and Illinois Bureau of Investigation special agent Angela Brough. These affiants alleged that the informant, while under the officers' surveillance, entered the defendant's residence and purchased drugs from the defendant which were promptly turned over by the informant to the waiting surveilling officers. In execution of the search warrant issued on the affidavits, narcotics were seized from the defendant's house. In the defendant's motion for an evidentiary hearing and to quash the search warrant and suppress the seized narcotics as evidence, the defendant alleged that he did not sell narcotics to the informer and that his house was green and not white as it was described in the affidavits. This court held that the trial court properly denied the defendant an evidentiary hearing on these contradictory assertions by the defendant.

In *People v. Coleman* (1980), 91 Ill. App. 3d 646, 415 N.E.2d 553, as a basis for an evidentiary hearing, the defendant denied that he sold drugs as alleged in the affidavit for the search warrant. This court, citing *Anderson* as authority, held that such a denial did not present a substantial preliminary showing of falsity or reckless disregard for the truth as contemplated in *Franks*. See also *People v. Born* (1983), 113 Ill. App. 3d 449, 447 N.E.2d 426, for an identical holding as in *Coleman*.

Following *Anderson* and *Coleman*, this court decided *People v. Reynolds* (1981), 96 Ill. App. 3d 79, 420 N.E.2d 1193. In *Reynolds*, the defendant contended, *inter alia*, that the officer affiant deliberately filed a vague and misleading affidavit. Although the trial court allowed an offer of proof, it did not consider any of the proffered evidence and it refused to go beyond the four corners of the warrant in determining its validity in overruling the defendant's motion to quash and suppress. In reversing the defendant's armed-robbery conviction, the court held:

> "*Franks v. Delaware*, cited above, authorizes inquiry into questions of false and misleading search warrant affidavits where there is reckless disregard for the truth. *** The omission in this case was deliberate. It was just such a reckless disregard for the truth as was envisioned in *Franks v. Delaware*. *** This is a case where the affidavit is insufficient because there is something lacking. That which is lacking is a recitation of facts to indicate that Reynolds had an opportunity to deposit the evidence in his apartment. It is lacking because the officer knew that the facts indicated that Reynolds had no such opportunity. Therefore, he deliberately left those facts out of his affidavit. What we have here is a deliberate omission, calculated to

mislead the judge who was being asked to issue the search warrant. The only response comporting with the Constitution and with basic, ethical procedural practice is to strike the warrant and any evidence produced from a search based thereon." *People v. Reynolds* (1981), 96 Ill. App. 3d 79, 82-83, 420 N.E.2d 1193.

*Reynolds* was followed by *People v. Garcia* (1982), 109 Ill. App. 3d 142, 440 N.E.2d 269. In *Garcia*, a jury found the defendant guilty of possession of cocaine with intent to deliver. Garcia contended for reversal that he was erroneously denied an evidentiary hearing on his motion to quash the search warrant and to suppress, which challenged the integrity and veracity of the warrant's supporting affidavit. This court reversed and remanded for an evidentiary hearing and for a new trial.

The police officer's affidavit in support of the search warrant in *Garcia* alleged that an anonymous, reliable informer told the affiant officer that Garcia, in Garcia's apartment, at a designated address, sold drugs to the informer's friend in the informer's presence. The officer's affidavit further stated that an independent investigation revealed that at the stated address a white Cadillac bearing Florida license GBH 166 was parked in front of the premises and that a computer check revealed that the vehicle was owned by the defendant.

In *Garcia*, the defendant's affidavit in support of his motion for an evidentiary hearing denied the allegations in the officer's affidavit and averred that his Cadillac automobile was not and could not have been in front of the apartment as alleged by the officer in his affidavit, because at the time the defendant was driving that automobile from his home in Miami, Florida, to Chicago. The court pointed out that the defendant challenged the integrity of the entire affidavit.

The defendant in the case before us also challenged the integrity of the officer's entire affidavit. Unlike the defendant's challenge of the officer's affidavit in *Garcia*, however, in the case before us the defendant's challenge to the integrity of the officer's affidavit was corroborated by Illinois Bell telephone bills which revealed, contrary to Officer Chambers' affidavit, that the telephone number was not registered in the name of the defendant, Augusta Zymantas. Also in *Garcia*, unlike in the case at bar, the defendant's challenge was based solely on his uncorroborated affidavit of denial. Yet the court in *Garcia* held that the defendant's affidavit constituted a substantial preliminary showing which entitled him to an evidentiary hearing.

The court pointed out further in *Garcia* that warrants are issued

under the imprimatur of the court and that it would make a mockery of the judge's role if police officers could without challenge freely employ false statements in an affidavit to obtain search warrants. The court emphasized that the imperative of judicial integrity would be seriously harmed if warrants could be obtained on knowingly false statements and that the judiciary could not and should not tolerate, approve or be an accessory to such despicable practices. The court concluded:

> "We recognize that even when a warrant affidavit is shown to contain blatant lies, *Franks* requires only that the lies be excised and the remainder of the affidavit be tested for probable cause. However, we believe the validity and effect of an intentionally false affidavit for a warrant is to be determined by Illinois law in an Illinois case, provided Illinois law does not give its citizens less protection than *Franks* and does not contravene rights and guarantees of the United States Constitution. [Citation.] The Illinois Supreme Court has not yet addressed the question of whether a search warrant issued upon an affidavit containing deliberate lies by the affiant should be upheld. We conclude that to hold such an affidavit is valid, even if the intentionally false allegations are not necessary for a finding of probable cause, would make the oath of an affidavit meaningless. For the reasons stated herein, we believe that Illinois law would not allow an affidavit which contains lies by the affiant to be used as a basis for issuing a warrant." *People v. Garcia* (1982), 109 Ill. App. 3d 142, 148-49, 440 N.E.2d 269.

The State did not seek review by the Supreme Court of Illinois of the appellate court's *Garcia* decision and the State's petition for a writ of *certiorari* to the Supreme Court of the United States was denied. *Illinois v. Garcia* (1983), 460 U.S. 1040, 75 L. Ed. 2d 792, 103 S. Ct. 1433.

Even though the court in *Garcia* pointed out that "[t]he Illinois Supreme Court had not yet addressed the question of whether a search warrant issued upon an affidavit containing deliberate lies by the affiant should be upheld" (*People v. Garcia* (1982), 109 Ill. App. 3d 142, 149, 440 N.E.2d 269), the trial court in the case at bar nevertheless refused to follow *Garcia* although it was explicitly asked by defense counsel to do so when it ruled on Zymantas' motion for an evidentiary hearing. The trial court responded, "The court feels that this [,*Garcia*,] is not the law, and never will be in this state."

*Garcia* was cited with approval, but distinguished, by the Supreme Court of Illinois in *People v. Martine* (1985), 106 Ill. 2d 429,

478 N.E.2d 262. In *Martine,* Chicago police officer Steve Kuhn was the affiant in the complaint for the search warrant. His affidavit alleged that a confidential informant told him that the informant had purchased drugs from the defendant in her home and that the defendant had additional drugs in her home when he departed. The defendant asserted in her motion for an evidentiary hearing that she did not make the narcotics sale alleged in Officer Kuhn's affidavit. The affidavits of two repairmen who worked at the defendant's premises stated that they had not seen anyone on the premises during the time of the alleged narcotics sale. These affidavits were submitted in support of the defendant's motion for an evidentiary hearing. The supreme court held that such denials did not constitute a substantial preliminary showing to warrant an evidentiary hearing and affirmed the trial court's denial of such a hearing. In so doing, the court approved the holding in *Garcia* in the following language:

"The defendant compares her situation with that in *People v. Garcia* [citation], in which an evidentiary hearing was ordered. The affidavits in that case, however, raised an issue of a type not present here and disputed every aspect of the officer's affidavit. The officer in that case stated in his affidavit, in addition to matters which relied on information supplied by an informant, that a Cadillac bearing described license plates was observed parked in front of the defendant's apartment on a certain day at a certain time. The defendant's affidavit contradicted this statement by setting forth that the defendant was en route in that automobile from his home in Florida at the time and on the date specified by the officer. In this case, the affidavits of Powers and Radzievewski were inconclusive; thus, all we have to rely upon is the defendant's denial of what the officer swore the informant told him. Nowhere in her affidavit has the defendant shown that Officer Kuhn knew or should have known that the informant's statements were false." 106 Ill. 2d 429, 436, 478 N.E.2d 262.

We are aware that when the trial court in the case at bar refused to follow *Garcia* on November 23, 1982, it did not have the benefit of the supreme court's February 6, 1985, decision in *Martine.*

The Supreme Court of the United States recently held in *Nix v. Whiteside* (1986), 475 U.S. ___, ___, 89 L. Ed. 2d 123, 138-39, 106 S. Ct. 988, 998, that "there is no right whatever—constitutional or otherwise—for a defendant to use false evidence." Likewise, the State may not use false evidence. (*United States v. Agurs* (1976), 427 U.S. 97, 103, 49 L. Ed. 2d 342, 349-50, 96 S. Ct. 2392, 2397; *Napue v. Illi-*

*nois* (1959), 360 U.S. 264, 269, 3 L. Ed. 2d 1217, 1221, 79 S. Ct. 1173, 1177; *In re Michael* (1945), 326 U.S. 224, 227, 90 L. Ed. 30, 33, 66 S. Ct. 78, 79-80; *Pyle v. Kansas* (1942), 317 U.S. 213, 216, 87 L. Ed. 214, 216, 63 S Ct. 177, 178-79; *Mooney v. Holohan* (1935), 294 U.S. 103, 112, 79 L. Ed. 791, 794, 55 S. Ct. 340, 342.) In the case before us, the defendant sought to establish that false evidence was used as a basis for the search warrant. He should not have been denied that opportunity. The success or failure of his efforts is a matter on which we express no opinion.

Officer Chambers' sworn statement that he checked with Illinois Bell security and found that telephone number 274-4967 was registered to Zymantas, the defendant's sworn denial that that telephone number was registered in his name and his corroborating Illinois Bell telephone bills were not "a matter of very small consequence" as the trial court stated. This evidence, along with the defendant's sworn denials and his allegations of Chambers' deliberate falsehood and reckless disregard for the truth, constituted an adequate and substantial preliminary showing to mandate granting the defendant an evidentiary hearing to challenge the allegations of the complaint for the search warrant.

For these reasons, the judgment of the trial court is reversed and the cause is remanded with directions to grant the defendant an evidentiary hearing to challenge Officer Chambers' affidavit.

Reversed and remanded, with directions.

SULLIVAN, P.J., and MURRAY, J.,* concur.

APPENDIX I

Officer Chambers' sworn allegations in the complaint for the search warrant.

"I Officer Patrick Chambers #7701, a Police Officer for the City of Chicago, assigned to the Vice Control Division, Gambling Unit met with a reliable informant on the 14th of April 1982. *This informant then stated he has been placing basketball wagers with a male known as Augie via Illinois Bell Telephone #274-4967* since the start of Basketball Season. This informant stated various males meet him to collect his losses and pay his

---

*Justice Mejda heard the oral argument in this case and following his retirement, Justice Murray was substituted, listened to the tape of the oral argument and read the briefs and record.

winnings. This informant has supplied the affiant with information in the past which has resulted in (5) five separate gambling raids with (5) five persons being arrested and contraband and USC being seized in each. In court (3) three persons were found guilty and (2) two persons were SOL'ed, all contraband was seized per court order.

On the 14th of April 1982, *the affiant dialed Illinois Bell Telephone #274-4967*, after (3) three rings a male answered, the affiant then handed the informant the phone which he held approximately 8" from the affiant's ear. The informant then gave a code number, this male voice then stated 'go ahead.' The informant then placed $200.00 on the Bulls and $100.00 on the over. On the 15th of April 1982, the same procedure was followed only the informant placed $200.00 on Detroit. *The affiant checked with Illinois Bell Telephone Security, and found that Illinois Bell Telephone #274-4967 is register[ed] to August Zymantas at 6157½ N. Leavitt Ave., house in the City of Chicago, County of Cook, State of Illinois. Based on the information received and conversation heard the affiant believes that August Zymantas is using the house at 6157½ N. Leavitt Ave. in the City of Chicago County of Cook, State of Illinois to accept sport wagers via Illinois Bell Telephone 274-4967.*" (Emphasis added.)

### Appendix II
#### "MOTION TO QUASH SEARCH WARRANT and TO PRODUCE INFORMANT

NOW COMES the petitioner, Augusta Zymantis [*sic*], by and through his attorneys, McCARRON & CARROLL, by John Paul Carroll, and moves this Honorable Court to Quash the Search Warrant and the proceeds for the following reasons:

(1) The complaint for search warrant includes hearsay averments of an undisclosed informer in addition to information which is supplied by the affiant, Police Officer Patrick Chambers.

(2) The undisclosed informer does not, in fact, exist.

(3) That on his sworn Complaint for Search Warrant, Officer Chambers made the following false statements knowingly and intentionally, or with reckless disregard for the truth:

(a) That an undisclosed informant was used in this investigation;

(b) That on 14 April 82, Officer Chambers observed this

fictitious informer dial the telephone number 274-4967;

(c) That Officer Chambers heard the fictitious telephone conversation;

(d) That Officer Chambers heard the fictitious informer give a code number and that a male voice on the telephone said 'go ahead';

(e) That Officer Chambers saw and heard the fictitious informer place a bet on the Bulls;

(f) That Officer Chambers was with the fictitious informer on the 15th of April where the same aforementioned procedure was used and the informer placed a bet on Detroit;

(g) That Officer Chambers checked with Illinois Bell Telephone and then determined that the telephone listed to August Zymantas;

(h) That Officer Chambers was informed by the fictitious [informer] that he had been placing basketball wagers with a male known as Augie via Illinois Bell Telephone number 274-4967;

(i) That the fictitious informer had given information to Officer Chambers.

(4) That the Petitioner has executed a sworn affidavit and has attached it to this Petition. (Exhibit A)

(5) That the case of *People vs. Garcia*, Number 80—2073, First District, Illinois Appellate Court, (1982) mandates that if any part of the sworn complaint contains deliberate lies, the whole affidavit falls. 'We conclude that to hold such an affidavit is valid, even if the intentionally false allegations are not necessary for a finding of probable cause, would make the oath of an affidavit meaningless.' Pg. 11. (Entire opinion attached as Exhibit B)

(6) That even if *Garcia* had not been decided, *Franks vs. Delaware*, 438 US 154 (1978) dictates that at least the lies should be exscinded [*sic*] and then the remaining information should be checked to see if it establishes probable [cause]. In the instant case, there would be nothing left after the lies were exscinded [*sic*].

(7) That in the interest of justice, the alleged informer should be produced at trial for cross-examination and to show that he does, in fact, exist.

WHEREFORE, the Petitioner respectfully requests that this Honorable Court order the State to produce the informer, and that in the alternative, the court quash and suppress the Search Warrant and

its proceeds."

## APPENDIX III

### "AFFIDAVIT

I, August Zymantis [*sic*] on oath do swear that the following facts are true and accurate:

1. That on 14 April 82 and 15 April 82, I was employed away from the home.

2. That on 14 April 82 I did not receive a telephone call from anyone who gave me a code number.

3. That on 14 April 82 I did not take a wager on a Bulls basketball game.

4. That on 15 April 82 I did not receive a telephone call from anyone who gave me a code number.

5. That on 15 April 82 I did not take a wager on a Detroit basketball game.

6. That before, during or after, 14 April 82 & 15 April 82, I was never the subscriber of Illinois Telephone Number 274-4967. (See Exhibit #1 attached)

7. That I have never taken bets from any individual with the use or aid of code numbers."

## APPENDIX IV

Defense counsel's repeated requests for an evidentiary hearing to challenge the veracity of Officer Chambers' allegations in the complaint for the search warrant.

"[W]hat we are looking for is a forum.
\* \* \*

I think if the court would allow us a forum \* \* \*.
\* \* \*

If he [the defendant, Augusta Zymantas] were allowed to testify he would testify \* \* \*.
\* \* \*

However, it is difficult for us to bring these points out if we do not have a forum to cross-examine officer Chambers.
\* \* \*

However, if it can be demonstrated, that the officer would testify it occurred at noon, we can show this Court with competent evidence, that the defendant was working at some other place.
\* \* \*

[W]ould the Court consider not ruling on this until, perhaps, at the close of the State's case?

\* \* \*

So, here we stand here, your Honor, attempting to show the Court that we would like to have a forum \* \* \*."

APPENDIX V

The trial court's responses to defense counsel's request for an evidentiary hearing to challenge the integrity of the allegations in the complaint for the search warrant.

"What has to be shown is that there was a false statement; it has to be demonstrated.

\* \* \*

A substantial showing made that a false statement was made, either intentionally, or through some reckless conduct.

MR. CARROLL [defense attorney]: That is true, Judge. \* \* \* I would suggest to the court that, if he [Officer Chambers] said in his affidavit, that he called the phone company and got the defendant's name, Augusta Zymantas, I would inquire, Judge, how would he get that information from the phone company. \* \* \*

THE COURT: As I told you, *that is a matter of small consequence.* It is to his residence and registered to Nancy, either his mother or his wife, or sister or somebody, Zymantas, but he lives there, too. That is the name, Zymantas.

\* \* \*

I would not call that reckless conduct, or a willful false statement, that should in any way affect the validity of the warrant.

\* \* \*

It does not have to be proven by a preponderance of the evidence, but there has to be a substantial demonstration, that a false statement was made, knowingly and intentionally, or with reckless disregard for the truth.

\* \* \*

He [the defendant Augusta Zymantas] says that he did not receive a phone call.

The Officer-Affiant says that he did and, at his number, the number registered to—Was that his wife, Nancy?

\* \* \*

[To] his wife at his home.

\* \* \*

*[I]f the number was wrong*, the number was to Smith or Jones, but *I feel that is a matter of very small consequence.*

And so, what I conclude is, that there is not here a substantial showing that there was—that there was any false statement here, in the affidavit or the Complaint for the Search Warrant, that is knowingly and intentionally made, or in reckless disregard of the truth. And, therefore, I see no basis for to order a hearing under these circumstances.

\* \* \*

I think there has to be a very definite indication of intentional or reckless act on the part of the affiant, the police officer, which I do not find to be the case here." (Emphasis added.)