THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ROGER HOLMES *et al.*, Defendants-Appellees.

First District (3rd Division) No. 87—0846

Opinion filed September 28, 1988.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry and Kim A. Novi, Assistant State's Attorneys, of counsel), for the People.

Julie L. Friedman, of Chicago, and Ronald Scott Lee, of Evanston, for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

Defendants were charged with the possession of more than 30 grams of cocaine with intent to deliver. Prior to trial, defendants filed a motion to quash the search warrant and for an evidentiary hearing. An evidentiary hearing was ordered, but before any evidence was presented, the trial court quashed the search warrant as a sanction for the State's failure to comply with a discovery subpoena. The discovery subpoena had been issued to assist defendant in preparing for the evidentiary hearing. On appeal, the State contends that the trial court erred in granting an evidentiary hearing, because a deliberate falsehood by the officer-affiant was not demonstrated and because even if the allegedly false averment was excised from the affidavit sufficient material remained to establish probable cause.[1]

---

[1]Because of the view we have taken, we need not reach the State's further contentions of error concerning the trial court's denial of the State's motion to quash the discovery subpoena.

On June 4, 1986, Detective Thomas Gallivan filed a complaint for a search warrant to search the basement apartment of Alvin Holmes. The apartment was located at 223 Custer Avenue in Evanston (223 Custer). The complaint sought the seizure of any cocaine, cocaine paraphernalia, money, and records involved in drug transactions as well as items proving residency.

Officer Gallivan was the sole affiant. The material allegations included the following: on June 1, 1986, he had a conversation with an informant whom he had known for two years. This informant had given him information on 17 previous occasions which resulted in arrests and the seizure of large quantities of cocaine and cannabis. Ten of these cases had resulted in guilty findings, and the remaining seven cases were pending in the judicial system. The informant allegedly said that he had purchased cocaine on 15 occasions from a black male who was described as 36 years old, 5 feet 8 inches tall, and weighing 155 pounds with a mustache and beard, and who resided at 223 Custer in the basement apartment (the apartment). The informant referred to this man as Alvin Holmes and said that his telephone number was 328-2823.

Officer Gallivan further alleged that the informant agreed to make a controlled purchase from Holmes on June 2, 1986. Prior to such purchase, however, Gallivan searched the informant for contraband and money. Finding none, the informant was issued prerecorded police funds to make the purchase. Officer Gallivan drove the informant to 223 Custer in an unmarked police vehicle. The informant was kept under observation as he exited the vehicle and entered the apartment. After the passage of a few minutes, the informant was observed exiting the apartment and reentering the police vehicle.

Officer Gallivan alleged that upon returning to the police vehicle the informant gave him a small, folded, white-paper packet containing a white-powdered substance which field tested as cocaine. According to the informant, after being admitted to the apartment by Holmes, Holmes asked what the informant wanted. The informant responded that he wanted to purchase cocaine, and he observed a large amount of a white-powdered substance on the kitchen table next to a scale and several small paper packets. Holmes removed one of the packets from the table and handed it to the informant in exchange for the police funds.

Officer Gallivan further alleged that a surveillance had been set up and the apartment was under surveillance for an hour, during which time seven vehicles arrived at 223 Custer. In each case, an occupant of the vehicle was observed entering the basement apartment

and remaining there for about the same time as the informant had remained. Officer Gallivan further averred that he checked with the telephone company. Its records indicated that a party named Holmes subscribed to service at 223 Custer. A check was also made of the mailboxes and the name of Holmes was observed on the mailbox associated with the apartment. The warrant issued, and when served, contraband was found in the apartment. Defendants were then placed under arrest on the premises.

On November 3, 1986, defendants presented their original motion to quash the search warrant and for an evidentiary hearing. The two grounds presented were that the door by which the informant is alleged to have entered the apartment could not be observed from Officer Gallivan's vantage point in his parked car and that on June 2, 1986, the mailbox associated with this apartment did not bear the name of Holmes.

In response, the State conceded that Officers Gallivan and Tomczyk had worked together on the surveillance, that it was Officer Gregory Tomczyk who positioned himself in the nearby public transit facility from which he could observe those entering and exiting the apartment, that between Gallivan and Tomczyk the informant was continuously under the surveillance of police, and that it was Officer Tomczyk who, on June 2, 1986, observed a mailbox at 223 Custer bearing the name "Holmes" and the designation "BST," which was taken to mean basement. The State took the position that the practice of imputing the knowledge of one officer to all police officers involved in a cooperative law enforcement operation had been upheld by the courts and that the practice of one officer-affiant summarizing the observations of all officers at the scene without discretely identifying each officer-observer is well established.

Defendants then made offers of proof in support of their claim that anyone's view of the pertinent doorway would be obstructed if seated in a nearby parked car, and that the regular mail carrier never observed the name of Holmes on the mailbox in question. The State then made an offer of proof indicating that the mail carrier would not be on the scene at the same time of day that Officer Tomczyk had observed a slip of paper on the mailbox bearing the name Holmes, that this slip of paper was unlike the plastic name tags appearing on each of the building's six mailboxes, and that the carrier was uncertain of the period of time that the name "Dunkley," which she associated with the apartment, actually appeared on the mailbox.

The trial court, in denying defendants' motion for an evidentiary hearing, noted that Officer Gallivan clearly used a first-person desig-

nation with regard to only some observations occurring on June 2, 1986. Concerning the remaining observations, Officer Gallivan had noted that a surveillance had been established. The court further noted that the existence of a surveillance implied both that a cooperative police operation was involved and that the observations averred without a discrete identification of the observer were made by fellow officers taking part in the surveillance. The trial court also noted that the connection of the name Holmes to the apartment was sufficiently corroborated by the telephone listing without regard to what name appeared on the mailbox and that any contradiction concerning the mailbox label did not affect a finding of probable cause.

At the next scheduled hearing of November 24, 1986, argument concerning the denial of defendants' motion for an evidentiary hearing and to quash the search warrant was presented. At this time the judge, sitting in place of the judge who had previously denied defendants' motion, took the view that *People v. Zymantas* (1986), 147 Ill. App. 3d 420, 497 N.E.2d 1248, had relaxed the criteria for granting an evidentiary hearing which had previously been adopted in *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674. The court's perception of current law was that the *Franks* criteria were no longer applicable in Illinois. On that basis, the trial court granted defendants an evidentiary hearing.

In response, defendants sought access by way of subpoena to Officer Gallivan's affidavits associated with the 17 previous instances wherein he had used the informant. Over the State's objection that compliance would be burdensome and that the identity of the confidential informant was being sought, the trial court ruled that defendants had made a sufficient showing to require the State's production of such documents. The court provided, however, that all identifying information should be excised and that an *in camera* review would be held to determine whether the State had demonstrated that the use of the single police-affiant procedure was an established law enforcement practice. In response, the State argued that it did not believe that the outlined procedures would protect the identity of the informant, that the State would not comply with the subpoena, and that an avenue open to the trial court was to quash the search warrant so that the State could take an interlocutory appeal. At the urging of defendants, the trial court quashed the search warrant as a sanction against the State.

▮ Inasmuch as the search warrant was quashed as a sanction for the State's refusal to comply with a discovery subpoena to assist defendants in preparation for the evidentiary hearing, the State first

contends that the trial court erroneously granted a hearing in violation of the principles set forth in *Franks v. Delaware*. We agree.

In *Franks v. Delaware*, the United States Supreme Court held

"[t]hat, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." 438 U.S. at 155-56, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676.

Although the framing of suitable rules to determine the sufficiency of a preliminary showing was left to the States, the *Franks* court nonetheless provided the following guidelines: there is a presumption of validity which attends the affidavit supporting a search warrant; any attack on the veracity of the affidavit must be more than conclusional and be supported by more than a desire to cross-examine; allegations of deliberate falsehood or reckless disregard of the truth are necessary and they must be supported by an offer of proof; allegations of simple negligence are insufficient; those portions of the affidavit which are allegedly false must be specifically identified; affidavits or otherwise reliable statements of witnesses (or satisfactory explanations of their absence) must accompany any challenge; and only the veracity of governmental affiants may be challenged. Even when the foregoing criteria have been satisfied, an evidentiary hearing is required only if, "when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains [in]sufficient content in the warrant affidavit to support a finding of probable cause." 438 U.S. at 171-72, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684.

■ For a time Illinois courts accepted only the initial criteria of *Franks* and refused to evaluate the alleged falsehood's effect on a finding of probable cause. (*People v. Zymantas* (1986), 147 Ill. App. 3d 420, 497 N.E.2d 1248; *People v. Garcia* (1982), 109 Ill. App. 3d 142, 440 N.E.2d 269.) However, in *People v. Lucente* (1987), 116 Ill. 2d 133, 146, 506 N.E.2d 1269, the supreme court recently held that Illinois law did not go beyond the parameters of *Franks* and that the de-

cision in *Garcia,* to the extent that it exceeded such parameters, should not be followed. In *Lucente,* the supreme court noted that "the purpose of *Franks* is to provide meaningful, albeit limited, deterrence of and protection against perjurious warrant applications" (116 Ill. 2d at 150), and that defendant's "preliminary burden must be sufficiently rigorous to preclude automatic hearings in every case, but not so onerous as to be unachievable" (116 Ill. 2d at 152). Accordingly, the trial court must carefully balance the averments in the affidavit versus those presented in support of the challenge to the warrant, and its judgment will not be disturbed provided that its discretion was exercised within permissible limits. 116 Ill. 2d at 150-53.

▬ Where the affiant entertains serious doubts as to the truth of his allegations, or the surrounding circumstances provide obvious reasons for doubting affiants' veracity, then a reckless disregard for the truth has been demonstrated. (*United States v. A Residence Located at 218 3rd Street* (7th Cir. 1986), 805 F.2d 256, 258.) Where allegations alleged to be deliberately false or made in reckless disregard of the truth are excised pursuant to the rule of *Franks,* the existence of probable cause based on the remaining averments is ascertained by the totality-of-the-circumstances approach. (*Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317.) This approach recognizes that law enforcement officers gather information at the scene from a variety of sources, that warrants are issued on the basis of nontechnical, commonsense judgments rather than the technical rules associated with the introduction of evidence in legal proceedings, and that use of hearsay in the affidavit is legally sufficient if corroborated by matters within the affiant's knowledge. (462 U.S. at 232, 235-36, 241, 76 L. Ed. 2d at 544, 546, 550, 103 S. Ct. at 2329, 2331, 2334.) In this regard, "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (462 U.S. at 238-39, 76 L. Ed. 2d at 548, 103 S. Ct. at 2332.) With regard to use of the hearsay of other law enforcement officers, it has long been recognized that "[o]bservations of fellow officers *** engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Ventresca* (1965), 380 U.S. 102, 111, 13 L. Ed. 2d 684, 690, 85 S. Ct. 741, 747.

▬ Here, during the November 3, 1986, hearing the trial court found that the affidavit was neither false nor misleading with regard

to the affiant's inclusion of the observations of another member of the surveillance team. In particular it noted that the affiant stated that a surveillance had been set up, which indicated the presence of other officers at the scene, and that the affiant had quite clearly labelled some of the observations as his and had just as clearly set forth other observations without discretely designating the identity of the officer-observer participating in the surveillance. Indeed, the affidavits supplied by defendants indicated that an effective surveillance at 223 Custer could not have consisted of a single officer because of the configuration of the building and entrance to the apartment.

With regard to the conflict between the averment that the name "Holmes" was on the mailbox and the mail carrier's affidavit which asserted that the name "Holmes" did not appear on the mailbox, the trial court noted that the affiant himself had corroborated Holmes' connection to the apartment via telephone company records. Accordingly, the trial court found that the affidavit was based on reliable information, and that even if the averment concerning the mailbox were set aside, the remaining material was sufficient to demonstrate probable cause. On this basis the motion for a *Franks* hearing was properly denied.

This ruling was subsequently reversed, however, by another judge. Without revealing its analysis of defendants' claim of deliberate falsehood, the trial court granted an evidentiary hearing based on the following interpretation of the decision in *Zymantas*: "I think we are coming into an area where there is going to be more liberal construction with respect to *Franks v. Delaware*. We have come a long way."

Although the trial court did not have the benefit of the *Lucente* decision at that time, the reliability of an officer-affiant describing his own observations as well as those of members of the law enforcement team conducting a cooperative operation on the scene, as was the case in *Ventresca*, had been long established.

Concerning the mailbox issue, prior to *Lucente*, the trial court was required to conduct an analysis under *Garcia* and *Zymantas* to determine whether a preliminary showing of a deliberate falsehood or reckless disregard of the truth had occurred. This was not done here. Moreover, on the record before the trial court, recklessness, much less perjury, could not have been found even in a preliminary sense.[2]

---

[2]It should be noted that defendants contend in their brief that the trial court found that there had been a deliberate falsehood. This mischaracterizes the record. The language relied on was merely the finding that defendants had demonstrated a sufficient basis for the issuance of a subpoena at a time when the holding of a *Franks* hearing was a *fait accompli*.

504

Clearly within the four corners of the affidavit here, the presumption of a fellow officer's veracity had not been overcome inasmuch as the affiant had independently corroborated the connection of the name Holmes to the apartment. Under the totality of the circumstances, the affidavit was sufficient to demonstrate the existence of probable cause with or without the mailbox allegation. Consequently, the order reversing the earlier denial of a *Franks* hearing was manifestly erroneous. Moreover, inasmuch as a hearing should not have been granted, the search warrant was erroneously quashed as a sanction for the State's failure to comply with a discovery subpoena issued solely to assist defendants in preparation for the *Franks* hearing. Because of the view we have taken here, it is unnecessary to consider the propriety of the trial court's denial of the State's motion to quash the subpoena.

The judgment of the circuit court of Cook County, which granted an evidentiary hearing and quashed the search warrant, is reversed and the matter is remanded for further proceedings.

Reversed and remanded.

WHITE, P.J., and RIZZI, J., concur.